[Civ. No. 5141.   Fourth Dist.   June 9, 1955.]

COUNTY OF SAN DIEGO, Petitioner, v. FRANK A. GIB-
SON, as Chairman of the Board of Supervisors, etc.,
Respondent; THE SAN DIEGO COUNTY HOSPITAL
MEDICAL RESEARCH FOUNDATION (a Corpora-
tion), Real Party in Interest.

James Don Keller, District Attorney, and Joseph B. Harvey, Deputy District Attorney, for Petitioner.

Robert E. Andreen for Respondent.

Olney R. Thorn and Byron F. White for Real Party in Interest.

BARNARD, P. J.—This is a proceeding in mandamus to compel the respondent, as chairman of the board of supervisors, to execute a contract for the purpose of securing certain medical and teaching services in the county hospital. There is no dispute as to the facts and the issuance of a writ is opposed solely on the ground that this contract cannot, for several reasons, be legally made.

Briefly stated, the following facts appear in the petition. The petitioner maintains and operates a county general hospital, as required by section 2500 of the Welfare and Institutions Code. The board of supervisors, herein referred to as the board, has determined that it is necessary to operate this hospital as a teaching hospital in order to adequately staff the institution, to maintain a proper standard of medical care, and to adequately care for persons lawfully admissible to the hospital. There are no medical schools in the area from which a staff of instructors might be drawn. Medical specialists engaged in private practice have heretofore, on a voluntary basis, been used to provide training and teaching facilities to internes, nurses, technicians, and other employees of the hospital; to provide research and library facilities which would otherwise be unavailable to the county, all of which are necessary to the operation of the hospital as a teaching hospital in order to attract qualified internes, residents, nurses and other personnel; to render medical care and services to patients in the hospital; and to supervise the medical care and services given to the patients by the hospital employees. Such medical care and supervision is highly skilled professional work, and is rendered by specialists of long experience in private practice. The members of this volunteer medical staff comprise approximately three-fourths of the members of the San Diego County Medical Society, an organization composed of all the doctors practicing in the San Diego area.

The members of this volunteer medical staff are unwilling to become employees of the county, and have informed the board that they are no longer willing to render such teaching services, or to render medical services to patients lawfully admitted to this hospital, unless compensation for such services is paid by the county. They have also informed the board that such compensation is desired solely for the purpose of using the sums so realized in order to secure, for benevolent and charitable purposes, proper medical treatment and facilities for the indigent sick of the county; to foster and promote the latest medical techniques and treatment for the benefit of said indigent sick; to advance the knowledge and practice of medicine through educational and research programs for the benefit of the indigent sick and the general public; and to secure the services of graduates of medical schools and licensed physicians in the treatment of the indigent sick through interne and residenceship programs at this hospital. For the purpose of receiving and administering said compensation for these purposes the members of the volunteer staff have formed a nonprofit charitable corporation under the provisions of section 9200 of the Corporations Code. This corporation is named the San Diego County Hospital Medical Research Foundation, and will be referred to as the Foundation. This Foundation has been granted exemption from franchise taxes and from contribution deductions, as a charitable corporation, by the State Franchise Tax Board, under the provisions of the Revenue and Taxation Code.

In order to secure for this hospital the services of a large and experienced staff of instructors and medical practitioners at a cost which will involve no curtailment of medical services, to secure for this hospital the latest developments of medical research, and to secure the other benefits derived from a teaching hospital, the board has authorized the negotiation of a contract with said Foundation and, by resolution duly adopted, has approved the contract in question and directed the respondent as chairman of the said board to sign and execute it on behalf of the county of San Diego. The respondent, as chairman of said board, having refused to sign said contract, the board directed the institution of this action to compel him to sign the same.

A copy of the proposed contract is attached to the petition. In brief, it provides that it shall continue in force for one year. The Foundation agrees to provide an adequate number

522

of qualified instructors from its physician members and to instruct the residents and internes at the hospital in the latest methods and techniques in the treatment of the sick, and to teach and instruct the student nurses in training at said hospital. It also agrees that its members will, in addition, furnish medical care and service to patients in the hospital, including the supervision of such medical and surgical care by the residents and internes of the hospital, and including both inpatients and outpatients. The county agrees to pay to the Foundation a stated fee for these teaching services for this year. It also agrees to pay to the Foundation the sum of $2.50 per day of hospital care or $2.50 per clinic visit for the supervision and direction of the care of each patient, subject to the limitation that no payment is to be made for services in caring for persons who are unable to pay for their medical care without causing them great hardship, and who do not have relatives legally responsible for the payment of the cost of such care; and subject to the further limitation that when a physician member of the Foundation performs services for a patient other than one coming within the first limitation, the county shall make, in addition to the per diem rate, a payment in accordance with the schedule of fees of the California Physicians Service, which schedule is attached to the contract. The Foundation further agrees to reimburse the county for any expenses incurred in determining the charges which shall accrue under this contract.

█ It is first contended that the petitioner is prohibited by section 202 of the Welfare and Institutions Code from entering into this contract for the care and treatment of the indigent sick or dependent poor. That section prohibits the board from contracting for the care of such persons except under certain circumstances. One of these exceptions applies to cases "(2) which require treatment or the use of facilities not immediately available in the county hospital." It further provides that in such a case "the board may secure for the indigent sick, and other persons admissible to the county hospital, at an agreed rate, hospital service or any portion thereof from any public or private hospital, . . . or other suitable facility. . . ."

The contract here in question rather clearly appears to be one between the board and "a suitable facility" for the purpose of securing hospital service or a portion thereof, and involving treatment or the use of facilities which would not otherwise be immediately available in this county hospital.

The services involved are reasonably necessary both in permitting the hospital to function as a teaching institution and to enable the hospital to render to the persons lawfully admitted thereto the necessary treatment and care and the facilities required for that purpose. We therefore hold that this contract is one within the powers of the county, as defined in section 202 of the Welfare and Institutions Code. (*County of Los Angeles* v. *Ford,* 121 Cal.App.2d 407 [263 P.2d 638].)

It is next contended that this contract violates Article XVII of the county charter. It is argued that it is therein provided that all classified positions must be filled under the civil service regulations, and that the services here in question are classified positions since they are not included in the list of unclassified positions.

The Civil Service provisions of this charter list certain positions as Unclassified Service, and provide that all positions not specifically included therein shall constitute classified service to which the civil service provisions shall apply. It is further provided, however, that in the event of the creation of a new position or in case of a vacancy in any position "requiring peculiar and exceptional qualifications of a scientific, professional or expert character," and upon satisfactory evidence that competitive examinations to qualify applicants for said position are impractical, the requirement for competitive examinations may be waived.

The contention thus made is sufficiently answered in the case of *County of Los Angeles* v. *Ford,* 121 Cal.App.2d 407 [263 P.2d 638], and the cases therein cited. That there are situations in which services may be obtained outside of civil service was recognized in *Stockburger* v. *Riley,* 21 Cal.App. 2d 165 [68 P.2d 741], and *State Comp. Ins. Fund* v. *Riley,* 9 Cal.2d 126 [69 P.2d 985, 111 A.L.R. 1503]; and was confirmed in *San Francisco* v. *Boyd,* 17 Cal.2d 606 [110 P.2d 1036] and *Kennedy* v. *Ross,* 28 Cal.2d 569 [170 P.2d 904]. This is a situation of that character which was sufficiently provided for in this charter provision to the effect that the civil service provisions should not apply to any position requiring exceptional qualifications of a scientific and professional character, where satisfactory evidence discloses that competitive examinations to qualify applicants are impracticable. The members of the Foundation, whose services are in question, are skilled professional men engaged in the practice of a highly technical profession and they are not to become

employees of the county, in any real and practical sense, within the meaning of the civil service provisions of the charter. These provisions were not intended to cover or apply to such services as are here in question, and we find nothing therein which would justify a court in holding that this proposed contract violates those provisions or would be illegal because thereof.

■ Finally, it is contended that this contract provides for the corporate practice of medicine by the Foundation, citing section 2008 of the Business and Professions Code and *People v. Pacific Health Corp.*, 12 Cal.2d 156 [82 P.2d 429, 119 A.L.R. 1284]. There is nothing in section 2008 which prohibits this contract, and the facts in the instant case meet all of the requirements laid down in the Pacific Health Corporation case. Under established principles it cannot be held that this contract provides for the corporate practice of medicine by the Foundation. (*County of Los Angeles v. Ford*, 121 Cal.App.2d 407 [263 P.2d 638]; *Complete Service Bureau v. San Diego County Med. Soc.*, 43 Cal.2d 201 [272 P.2d 497].)

Let the peremptory writ issue as prayed for.

Griffin, J., and Mussell, J., concurred.