[No. D024003. Fourth Dist., Div. One. Aug. 19, 1996.]

ALAN J. CONRAD et al., Plaintiffs and Appellants, v.
MEDICAL BOARD OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Weissburg & Aronson, Foley, Lardner, Weissburg & Aronson, Gregory V. Moser, Parham & Associates and Jackson E. Parham for Plaintiffs and Appellants.

Dennis M. Lynch and Regina Tanner as Amici Curiae on behalf of Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, and Beth Faber Jacobs, Deputy Attorney General, for Defendant and Respondent.

Catherine I. Hanson and Astrid G. Meghrigian as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

HUFFMAN, J.—This appeal presents the issue of whether Health and Safety Code[1] section 32129 creates an exception to the historic doctrine prohibiting the corporate practice of medicine, by expressly or impliedly expanding the powers of a hospital district or health care district to employ physicians, as opposed to treating these physicians as independent contractors. The plaintiffs and appellants are a local hospital district, Palomar Pomerado Health System (the District), and nine physicians with whom the District has employment agreements, Alan J. Conrad, M.D., et al. (collectively Appellants). The defendant and respondent is the Medical Board of

---

[1]All statutory references are to the Health and Safety Code unless otherwise specified.

California (the Medical Board), an administrative agency which has the authority to enforce the Medical Practice Act, which establishes professional regulation and a discipline system for physicians. (Bus. & Prof. Code, §§ 2000 et seq., 2004.) Amicus curiae briefs have been filed at the trial and appellate levels by the California Medical Association (CMA), a professional association of physicians, and by several fellow hospital districts.

The trial court was presented with undisputed facts which raised a question of law as to the proper interpretation of the statutory scheme of which section 32129 is a part. On cross-motions for summary judgment, the court ruled in favor of the Medical Board, granting summary judgment and declaratory relief to the effect that local hospital districts could not legally employ physicians, but could only contract with them as independent contractors. (Code Civ. Proc., §§ 437c, 1060 et seq.) As we shall show, the trial court's interpretation of existing law was correct.

I

*Arguments on Appeal*

▪ The main focus of this appeal is section 32129, providing in full: "Notwithstanding the provisions of the Medical Practice Act [(Bus. & Prof. Code, § 2000 et seq.)], the board of directors may contract with physicians and surgeons, health care provider groups, and nonprofit corporations for the rendering of professional health services on such basis as does not result in any profit or gain to the district from the services so rendered and as allows the board to ensure that fees and charges, if any, are reasonable, fair, and consistent with the basic commitment of the district to provide adequate health care to all residents within its boundaries."

One of the provisions of the Medical Practice Act (Bus. & Prof. Code, § 2000 et seq.) referred to by section 32129 is Business and Professions Code section 2400, providing that corporations and other artificial legal entities "shall have no professional rights, privileges, or powers"; in general, this section embodies a ban on the corporate practice of medicine.[2] However, the statute contains an exception allowing approval of the employment of licensees on a salary basis "by licensed charitable institutions, foundations, or clinics, if no charge for professional services rendered patients is made by any such institution, foundation, or clinic."

---

[2] In a nutshell, the corporate practice doctrine provides that a corporation may not engage in the practice of the profession of medicine. (*People* v. *Pacific Health Corp.* (1938) 12 Cal.2d 156, 158 [82 P.2d 429, 119 A.L.R. 1284].) The "principal evils" thought to spring from the corporate practice of medicine are "the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer." (*Id.* at p. 160.)

According to Appellants, the introductory phrase in section 32129, "[n]ot-withstanding the provisions of the Medical Practice Act," establishes an express exception to the ban on corporate practice of medicine, allowing the board of directors of a hospital district or health care district[3] "to contract with physicians and surgeons," *including entering into an employment contract*, for the provision of health care services, so long as the two general restrictions in section 32129 are met: the district may not profit or gain from the services so rendered, and the board must ensure that the fees and charges are reasonable, fair, and consistent with the district's commitment to provide adequate health care to its constitutents.

If no express exemption to the corporate practice doctrine is created by statute, then Appellants argue an implied exemption may be found in the legislative history of the statute and its numerous amendments. (See pt. III. D., *post*.) Appellants then switch gears, arguing in response to the amicus curiae brief of Kaweah Delta Health Care District that it is immaterial whether a particular doctor's contract is deemed to be one of employment or not, when considering whether section 32129 and the corporate practice doctrine permit any such contract; instead, only the general restrictions of section 32129 should control. Appellants now claim they are not seeking a broad ruling overturning the corporate practice doctrine, in order to allow the District to employ physicians, but rather seek only to establish that section 32129 permits these particular employment agreements.

In contrast, the Medical Board and amicus curiae CMA stoutly defend the corporate practice doctrine against all attacks, direct or indirect, evidently assuming that Appellants' challenge was a broad one attacking the continued validity of this doctrine. To analyze these arguments and the proper scope of this appeal, we first set forth the background of the corporate practice doctrine, and then apply it to this record.

II

*Corporate Practice Doctrine*

 The Medical Practice Act prohibition of the corporate practice of medicine is declaratory of a basic public policy against corporate practice of the learned professions. (*People* v. *Pacific Health Corp.*, *supra*, 12 Cal.2d at p. 159.) The doctrine is intended to ameliorate "the evils of divided loyalty and impaired confidence" which are thought to be created when a

---

[3]Under section 32000, any reference to local hospital districts shall be deemed a reference to local health care districts, and the terms may be used interchangeably. (See also § 32001, subd. (a).)

corporation solicits medical business from the general public and turns it over to a special group of doctors, who are thus under lay control. (*Id.* at pp. 158-159.) In that case, striking down one such arrangement, the Supreme Court noted that it had approved that day, in *Butterworth* v. *Boyd* (1938) 12 Cal.2d 140, 148 [82 P.2d 434, 126 A.L.R. 838], a slightly different system adopted by the City and County of San Francisco for the furnishing of medical service to its employees. There, the Supreme Court held that the municipality of San Francisco had the power to act in this field to benefit city employees and, accordingly, their employer. (*Ibid.*)

As this authority shows, the general ban on the corporate practice of medicine is subject to several exceptions. First, Business and Professions Code section 2400 recognizes that physicians may be employed on a salaried basis by licensed charitable institutions, foundations, or clinics, if patients are not charged for the professional services rendered.[4] In *County of Los Angeles* v. *Ford* (1953) 121 Cal.App.2d 407, 413-414 [263 P.2d 638], the court found no violation of the corporate practice of medicine doctrine when the county entered into contracts with certain medical schools to provide staffing for county general hospitals, with the doctors and medical students to act as independent contractors who were responsible for the manner in which they performed services for patients. (*Id.* at p. 410.) It was found significant that the schools were not offering medical services to the public generally, and that the schools played no part in the actual relationship of doctor and patient. (*Id.* at p. 414.) It was also found significant that the county had the obligation to provide care for the indigent sick, and that these contracts sought to fulfill that aim. (*Id.* at p. 408.) A similar result was reached in *County of San Diego* v. *Gibson* (1955) 133 Cal.App.2d 519, 524 [284 P.2d 501], where it was held that a county could lawfully enter into a contract with a nonprofit charitable corporation for the corporation to provide medical instruction for staff at the hospital and care and service to patients in the hospital for stated fees. The court stated that these facts met all the requirements laid down in the *Pacific Health Corp.* case (12 Cal.2d 156, 160) (i.e., that medical services were rendered to a limited and particular group as a result of cooperative membership or association, or employment by a corporation having an interest in its employees' health; and the doctors were not employed or used to make profits for stockholders, as the institution was organized as a nonprofit corporation or association).

Case law has also illustrated the types of contracts which have been approved as outside the ban on corporate medical practice. For example, in

[4]The principal test of an employment relationship is whether the employer has the right to control the manner and means of accomplishing the result desired. (*Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946 [88 Cal.Rptr. 175, 471 P.2d 975].) An independent contractor relationship exists where control may be exercised only as to the result of the work and not the means by which it is accomplished. (*Id.* at pp. 946-947.)

*Blank* v. *Palo Alto-Stanford Hospital Center* (1965) 234 Cal.App.2d 377, 390 [44 Cal.Rptr. 572], it was held that a contract between a hospital and a physician's group was not illegal, even though it provided for a percentage split of gross income from fees for diagnostic services provided by the physician's group, because the doctors retained their freedom of action in conducting their practice. The evidence showed that the portion of the fees received by the hospital was proportionate to the hospital's expenses incurred in furnishing diagnostic facilities. (*Ibid.*) Thus, the hospital's contract for a closed staff practice of diagnostic radiology was not an illegal contract. (*Id.* at pp. 390-394.) These were noted to be services customarily provided by hospitals, not only medical services. (*Id.* at pp. 386-387.) Similarly, in *Letsch* v. *Northern San Diego County Hosp. Dist.* (1966) 246 Cal.App.2d 673, 677 [55 Cal.Rptr. 118], it was held that the hospital district had the authority to operate a closed staff radiology department by contracting with medical providers for such services, and that other physicians not included in the closed staff could not justifiably claim they were deprived of their rights to practice medicine. (*Ibid.*)

From these authorities, it is evident that there are chinks in the armor of the corporate practice doctrine. Certain medical and other institutions are allowed to enter into certain contracts for employment of physicians, but only under certain circumstances. Appellants' view is that they, a hospital or health care district which entered into contracts for employment of physicians, should be viewed as equivalent to a municipality or a nonprofit corporation which may properly provide care to patients through physician-employees. Appellants thus claim that their contracts should fall within the scope of section 32129, because no problematic divided loyalties are created. To analyze these arguments, we must look both to the nature of the party seeking to contract with the physicians, i.e., the hospital district/health care district (§ 32000 et seq.), and also the nature of this particular contract, all with reference to the statutory scheme of which section 32129 is a part.

III

*Application of Rules*

A

*The Record*

The Medical Board did not dispute any of the undisputed material facts set forth by Appellants in their summary judgment motion. These facts included the identities of the parties and copies of the employment agreements

between the District and each of the physicians. The undisputed facts include that the responsible state agency and official, the deputy director of legal affairs of the Department of Consumer Affairs, first issued a written opinion in 1991 that section 32129 created an exception to the corporate practice doctrine, authorizing district hospitals to employ physicians. However, in 1994, the Department of Consumer Affairs reversed its position and notified attorneys for the district that hospital districts may not employ physicians. Although plaintiffs could have faced civil proceedings because of this administrative interpretation, the parties to this action stipulated that there would be no enforcement action taken by the Medical Board during the pendency of this action, and the parties further stipulated that estoppel would not be an issue concerning the initial approval, then disapproval, of these contracts by the responsible state agency.

The copies of the employment agreements in the record show that the employed physicians are required to meet targets of 4,600 patient encounters per year. If the physician does not meet the target, and if 45 percent of the fees generated by the physician are less than his or her base salary, then the employment contract will not be extended. The employment contract also provides for an incentive fund which represents additional compensation which the physician may receive from the surplus funds remaining after the employee-physicians' base salaries are deducted from a certain percentage of the collections made by the hospital's adult medicine division, the physicians' employer.

Pursuant to stipulation, the trial court deemed the Medical Board's opposition to Appellants' summary judgment motion to be a cross-motion for summary judgment, and took amicus curiae briefing from the Southern Mono Hospital District and the Association of California Hospital Districts. The CMA also filed an amicus brief. Judgment was rendered for the Medical Board.

B

*Standards on Review*

■ Interpretation and application of a statutory scheme to an undisputed fact pattern is a question of law, subject to de novo review on appeal. (*Rudd v. California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948, 951 [268 Cal.Rptr. 624].) "The general principles which guide interpretation of a statutory scheme are equally settled. Our function is to ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citation.] To ascertain such intent, courts turn first to the words of the statute itself (*ibid.*),

and seek to give the words employed by the Legislature their usual and ordinary meaning. [Citation.] When interpreting statutory language, we may neither insert language which has been omitted nor ignore language which has been inserted. [Citation.] The language must be construed in the context of the statutory framework as a whole, keeping in mind the policies and purposes of the statute [citation], and where possible the language should be read so as to conform to the spirit of the enactment. [Citation.]" (*Rudd* v. *California Casualty Gen. Ins. Co.*, *supra*, 219 Cal.App.3d at p. 952.)

Where statutory provisions are unclear, they should be interpreted to achieve the purpose of the statutory scheme and the public policy underlying the legislation. (*Sutco Construction Co.* v. *Modesto High School Dist.* (1989) 208 Cal.App.3d 1220, 1231 [256 Cal.Rptr. 671].) "An important aid in this regard is the legislative history of the statute. [Citation.]" (*Ibid.*)

## C

### *Statutory Interpretation: Overall Statutory Scheme*

■■■ With these standards in mind, we examine three aspects of section 32129: its plain language, its placement within an overall statutory scheme, and its legislative history. First, there are two general areas of ambiguity in section 32129: its introductory clause, "notwithstanding the provisions of the Medical Practice Act . . . ," and the use of the term "may contract with," as not specifying what type of contract was contemplated. According to Appellants, the introductory clause creates an exception to the Medical Practice Act to permit such employment contracts; the Medical Board responds that this clause should instead be read, "Despite the restrictions in the Medical Practice Act." Since the statute can reasonably be read either way, we turn to the next part of our inquiry, reading the statute in context with related provisions.

■■■ "Another principle of statutory construction is pertinent here. Where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. [Citation.]" (*Yoffie* v. *Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 753 [238 Cal.Rptr. 502].) ■■■ Section 32129 sets forth one means by which the board of directors of a hospital/health care district may exercise its powers. The overall statute setting forth the powers of such a district, section 32121, includes two provisions using the word "employ," pertaining to the district's power to "employ legal counsel" (§ 32121, subd. (f)) and to "employ any officers and employees, including architects and consultants." (§ 32121, subd. (g).) However, in subdivision (r) of section 32121, the general statement is made, "Nothing in this section

shall authorize activities that corporations and other artificial legal entities are prohibited from conducting by section 2400 of the Business and Professions Code." From this we may first conclude that the Legislature knew how to authorize employment of professionals, but did so in only two instances.

A similar reference to section 2400 of the Business and Professions Code (referring to the prohibition on professional activities by corporations and other artificial legal entities) appears in section 32126.5, pertaining to the district's board of director's powers to assure the provision of adequate health care in the district by entering into contracts with health provider groups, community service groups, and independent physicians, surgeons, and podiatrists. (§ 32126.5, subd. (b).) The appearance of this clause in sections 32121 and 32126.5 makes it clear that the corporate practice doctrine was intended to continue to apply to hospital/health care districts, at least as far as the activities mentioned in these two sections are covered.

Moving on to the activity mentioned in section 32129, the rendering of professional health care services, the restrictions are stated that (a) the district may not profit or gain from the services so rendered and (b) the board must ensure that fees and charges are reasonable and appropriate. This language looks familiar, as the case law makes clear that various entities which are not subject to the corporate practice doctrine are also subject to similar restrictions: (a) there may be no profit or gain by reason of the doctors' services, and (b) the fees charged for the doctors' services must be appropriate (or waived, e.g., where charitable groups or membership/employer entities are serving their own constituents and have an interest in the welfare of those constituents). (*People* v. *Pacific Health Corp.*, *supra*, 12 Cal.2d at pp. 160-161.) Thus, section 32129 places the same type of restrictions on the District as have already been placed on other organizations that are exempt from the application of the corporate practice doctrine.

However, this similarity does not in itself mean that the District is likewise exempt from the doctrine. Instead, one must look to the nature of the District and this particular contract. This District and this contract do not qualify under the type of restrictions approved by the Supreme Court in the *Pacific Health Corp.* or *Butterworth* cases (12 Cal.2d 156; 12 Cal.2d 140). Specifically, Appellants did not show that these professional services would be restricted to a membership group or some other subset of the public, rather than the entire public, as was required in *Butterworth* v. *Boyd*, *supra*, 12 Cal.2d at pages 146-148, and referred to in *People* v. *Pacific Health Corp.*, *supra*, 12 Cal.2d at page 160. Rather, section 32129 expressly states that the district has a basic commitment to provide adequate health care to all residents within its boundaries. Similarly, another important restriction is

absent: that specified in Business and Professions Code section 2400, that no charge may be made by employee doctors for their professional services, rendered through a charitable foundation or clinic; this particular arrangement is not a charity operation directed at certain recipients.

Further, the district is not the type of public entity, a municipality, which the Supreme Court recognized could employ physicians to render care to its employees. (*Butterworth* v. *Boyd, supra,* 12 Cal.2d at pp. 146-148.) The Legislature may authorize a public corporation to build and operate a hospital as a business, pursuant to the local hospital district law. (*Paso Robles etc. Hospital Dist.* v. *Negley* (1946) 29 Cal.2d 203, 204 [173 P.2d 813]; § 32000 et seq.) A district hospital board is not a constitutional legislative body, but rather operates under specific statutory authorization. (*Rosner* v. *Peninsula Hospital District* (1964) 224 Cal.App.2d 115, 121 [36 Cal.Rptr. 332], disapproved in other part in *King* v. *Meese* (1987) 43 Cal.3d 1217, 1234-1235 [240 Cal.Rptr. 829, 743 P.2d 889]; *Yoffie* v. *Marin Hospital Dist., supra,* 193 Cal.App.3d 743, 750; § 32000 et seq.) Thus, it is not correct to consider a hospital/health care district to be a public entity in the same sense that a municipality is a public entity and, even though it is a governmental creation, it is not entitled to the same powers as were outlined in *Butterworth.*

We next turn to related statutes dealing with the relationship of doctors and hospital districts. Section 32121.3, subdivision (a) sets forth the power of a hospital district, through its board of directors, to offer incentives to physicians and surgeons to practice in the communities served by the district, such as minimum income guarantees and reduced rental rates. This section shows that it is not necessary to *employ* doctors in order to attract them to the hospital district's community, since the Legislature has afforded another means to do so.

In contrast, the health care service plan legislation, applicable to health maintenance organizations (HMO's), specifically authorizes plans licensed under that chapter to *employ* medical professionals to deliver professional services. (§§ 1340 et seq., 1395, subd. (b).) However, the district is not a health care service plan licensed under that chapter, but rather operates under its own statutory scheme. (§§ 1340 et seq., 32000 et seq.)

It is also of some interest that the Legislature has created an emergency medical services fund authorization in section 1797.98a et seq., providing for establishment of a fund to reimburse physicians and hospitals for charges incurred by patients who do not make payments for emergency services received. A doctor who is on salary would have no need for such reimbursement for services rendered. This indicates that doctors are still normally

considered to be independent contractors rather than employees. (Also see Welf. & Inst. Code, § 14088, subd. (b), referring to the ability of "counties or other political subdivisions" to employ doctors; as noted above, a hospital district is not considered a political subdivision, but rather a statutory entity.)[5]

Having compared these companion statutes to section 32129, we conclude its reference to "contracting" with physicians and surgeons represents a reference by the Legislature to the historic practice of treating doctors who work for any entity which renders service to the public, rather than to a defined employee, membership, or charitable group, as independent contractors, not employees. We also conclude the introductory language of section 32129, "Notwithstanding the provisions of the Medical Practice Act," does not create an exception to the corporate practice doctrine, but rather was intended to clarify that this particular practice of treating physicians as independent contractors in this context remains permissible and is not in conflict with the Medical Practice Act.

D

*Legislative History*

Our examination of the legislative history of section 32129 leads to a similar conclusion. As originally enacted in 1947, section 32129 stated that local hospital districts shall not have authority to render professional services either directly or through persons employed by the district. Although each hospital district had to comply with the prohibition on corporate practice (then found in Bus. & Prof. Code, § 2008), the board of directors of the hospital district was authorized to contract with physicians for professional services rendered in the hospital, under the direction or request of attending physicians of patients in the hospital, on a basis not resulting in any profit or gain to the district from the services.

However, in 1972, this section 32129 was repealed and a new section 32129 was added, beginning with the "[n]otwithstanding the provisions of [then section 2008 of the Business and Professions Code, now section 2400]" language. This amendment was accomplished through Senate Bill No. 998, 1972 Regular Session, whose purpose was to expand the kind of services a local hospital district could provide by permitting nonhospital

---

[5]The parties argue back and forth whether the requirement in the employment agreement that the physician participate in a self-governing medical staff of the hospital indicates one way or the other whether employment of physicians is permissible. We do not find this argument helpful either way; it is not inconsistent with employment of a doctor to require medical staff membership. (§ 32128; Bus. & Prof. Code, § 2282.)

health care services to be operated. Thus, when the language referring to the "direction or request of attending physicians of hospital patients" was dropped from the section, that change had nothing to do with whether physicians could be employed, but rather referred generally to authorizing nonhospital services by hospital districts. The legislative history shows a letter by the CMA complaining that the proposed 1972 amendment might eliminate the ban on the corporate practice of medicine, but there is no showing of any response to this concern by the Legislature or its committees. Accordingly, the raising of this concern by CMA does not of itself show that any change in the applicability of the corporate practice doctrine was accomplished. The legislative materials do not show any intent to permit employment of physicians. The traditional meaning of "contracting" with physicians and surgeons thus remained in effect.

In 1988, section 32126.5, stating the powers of the district's board of directors, was amended to add the reference to Business and Professions Code section 2400 to clarify which additional services could be provided by the district, such as entering into contracts with health provider groups, etc. No change in the law to authorize employment of physicians directly by hospital/health care districts was accomplished by this amendment.

In 1990, sections 32121 (describing the district's powers) and 32128 (describing rules of the hospital) were amended. In section 32121, language was added emphasizing that nothing in this section permitted a violation of Business and Professions Code section 2400. The amendments did not make substantive changes, but rather made technical changes and clarified certain powers and rules of district hospitals. No new authorization of employment of physicians by hospital/health care districts was accomplished by this amendment. Overall, we have been given no reason to treat section 32129 differently from its related sections, 32121 or 32126.5.[6]

Finally, to the extent that appellants are attacking the corporate practice doctrine as outmoded or inappropriate for today's medical community, our

---

[6]Amicus curiae CMA makes an argument about language originally found in a 1994 bill, Senate Bill No. 1169 (1993-1994 Reg. Sess.) which amended various portions of the hospital district law (e.g., § 32121). The argument is that the bill originally contained language repealing certain language barring the corporate practice of medicine, although that amendment designed to repeal the bar was eventually deleted. CMA has not provided legislative history material of which we may take judicial notice on this point, nor does it make any citation to the record to support the point. In any case, unpassed bills or rejected provisions have little value as evidence of legislative intent. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323].) The version of Senate Bill No. 1169 that was eventually passed retains the language referring to Business and Professions Code section 2400 in the amended version of section 32121. (Stats. 1994, ch. 696, §§ 6 & 7.) Thus, this point is not helpful to the CMA/Medical Board position.

response is that we do not make policy, but rather apply existing rules to the facts presented.[7] Along these lines, the observations made by the Supreme Court in 1938 in *People* v. *Pacific Health Corp.*, *supra*, 12 Cal.2d at pages 160-161 are still apropos: "The other question raised by defendant's proffered materials is whether the time has come, as indicated by the movement for health insurance and group medicine, to reverse the long-settled policy against corporate medical practice and declare it legal and proper. A simple answer would be that the few extracts from the opinions of writers which we find in the briefs furnish us with no evidence whatsoever of a widespread change in social viewpoint sufficient to repudiate the existing law of practically all the states. All that we have before us is the proof of a controversy which has raged for years, between medical men, sociologists and others, as to the future course of medical practice. The desirability of present methods and the suggested reforms, including various kinds of insurance and group treatment, are hotly debated. [Citation.] Public policy may change, and doubtless where statutes do not cover the field, the court may follow such changes, but the court must, in such case, declare the *public* policy, the social view of people generally, and not merely its own private choice among hopelessly conflicting views of desirable reform of settled practices or principles in this field. In the present circumstances there can be no true declaration by this court that a change in social viewpoint now requires the abandonment of the rule against corporate practice of medicine. Such a drastic change should come from the legislature, after the full investigation and debate which legislative organization and methods permit. Though certainly aware of the controversy, and with presumed knowledge of our decisions preventing corporate practice [citation], the legislature thus far has not acted, and until it does we deem it proper to follow the existing law. [Citation.]" (*People* v. *Pacific Health Corp.*, *supra*, 12 Cal.2d at pp. 160-161, original italics.)

---

[7]To support their position, appellants have requested and obtained an order from this court taking judicial notice of two law review articles criticizing the corporate practice doctrine. (Wiorek, *The Corporate Practice of Medicine Doctrine* (1987) 8 J. Legal Med. 465; Chase-Lubitz, *The Corporate Practice of Medicine Doctrine: An Anachronism in the Modern Health Care Industry* (1987) 40 Vand. L.Rev. 445.) The Wiorek article indicates California is now in a minority of states following the corporate practice of medicine doctrine. (Wiorek, *op. cit. supra*, at pp. 471-483; see also *St. Francis Reg. Med. Ctr.* v. *Weiss* (1994) 254 Kan. 728 [869 P.2d 606, 618], holding that Kansas law does not prohibit a licensed hospital from contracting for the services of a physician/employee.) Appellants have also raised several arguments on appeal that were not before the trial court: the corporate practice doctrine is an illegal restraint of trade, and federal HMO law should preempt the corporate practice doctrine. In response to the Medical Board's objections to these new arguments, appellants explain that these are merely illustrations of why the corporate practice doctrine should be considered outmoded. Since statutory interpretation rules are dispositive, we need not reach any of these policy questions in this case, even if they were properly before this court. (*Estate of Coate* (1979) 98 Cal.App.3d 982, 986 [159 Cal.Rptr. 794].)

Because we conclude these physician employment contracts were not legally authorized by section 32129, we need not reach the question of whether their terms complied with the specific requirements of that section.

DISPOSITION

The judgment is affirmed.

Work, Acting P. J., and McDonald, J., concurred.

Appellants' petition for review by the Supreme Court was denied November 13, 1996. Mosk, J., and Chin, J., were of the opinion that the petition should be granted.