[No. G017295. Fourth Dist., Div. Three. Dec. 9, 1997.]

LESTER R. RASH, Plaintiff and Respondent, v.
DANIEL E. LUNGREN as Attorney General, etc., et al., Defendants and
Appellants.

1234

COUNSEL

Daniel E. Lungren, Attorney General, Floyd D. Shimomura, Assistant Attorney General, and Christopher C. Foley, Deputy Attorney General, for Defendants and Appellants.

Creighton Laz, Schulman & McMillan and Lynne M. Patterson for Plaintiff and Respondent.

OPINION

BEDSWORTH, J.—The Attorney General appeals from a judgment granting a peremptory writ of mandate to the California Department of Justice Bureau of Criminal Identification and Information and the California Department of Consumer Affairs Bureau of Security and Investigative Services

(State), requiring that they set aside their decision revoking Lester R. Rash's permit to carry a firearm. Our analysis of controlling statutes convinces us the revocation was proper, and we, therefore, reverse the judgment.

## INTRODUCTION

This case concerns itself solely with the construction of Penal Code sections 12021 and 12021.1. At first blush, the statutes seem impenetrable. Reading them is hard, writing about them arduous, reading about them probably downright painful. The similarity of the section numbers and the fact each section has a particular subdivision which requires discussion in conjunction with other similarly denominated subdivisions makes for tough sledding. As Alfred North Whitehead wrote of rationalism, the effort is, itself, "an adventure in the clarification of thought." (Whitehead, Process and Reality (1929) pt. I, ch. 1, § 3.) The reader who is not inclined to such adventure and who is fortunate enough not to confront these statutes is probably well advised to forego this opinion.

Although the nomenclature of the statutes we discuss is confusing, we have determined their provisions, when carefully considered, reflect a clear legislative intention to prohibit those who have been convicted of assaults with firearms under Penal Code section 245, subdivision (a)(2) from ever possessing firearms again. The permanent ban, found in section 12021, subdivision (a) and again in subdivision (a) of section 12021.1, is not subject to exception. On the other hand, in section 12021, subdivision (c)(1), the Legislature has provided a more limited ban on the possession of firearms by those convicted of misdemeanor assaults with deadly weapons that do *not* involve firearms. And under section 12021, subdivision (c)(2), those subject to this lesser prohibition can petition for relief from its provisions if they meet certain conditions set out in the subdivision. We conclude Rash is subject to the permanent ban.

I

On July 11, 1991, Lester Rash was convicted of a misdemeanor violation of Penal Code[1] section 245, subdivision (a)(2)—assault with a firearm. At the time of his conviction, Rash had been an armed security officer for 12 years and was second in seniority at his place of employment. Sixteen months later, apparently prompted by Penal Code provisions prohibiting those convicted of assaults with deadly weapons from possessing firearms, he initiated a series of steps intended to safeguard his job—which required that he carry a gun. First, he obtained an order from a superior court judge

---

[1] All statutory references are to the Penal Code.

expunging his misdemeanor conviction under section 1203.4.[2] A month later, the same judge signed a second order granting "relief pursuant to Penal Code § 12021(c)(2)" and directing that Rash "not be prohibited from carrying a firearm" while working. Despite these orders and Rash's efforts, the State revoked his permit to carry a firearm on May 3, 1994, relying on the provisions of sections 12021 and 12021.1.

In December 1994, Rash filed a petition in superior court seeking a writ of mandate to the State compelling reinstatement of his firearm permit. He grounded his argument on the premise that a conflict existed between section 12021, subdivision (c) on the one hand, and sections 12021, subdivision (a), and 12021.1 on the other.[3] As he construed the statutory scheme, section 12021, subdivision (a) and section 12021.1 set out a *general* rule permanently disqualifying persons convicted of *any* assault with a deadly weapon under section 245 from possessing firearms, while section 12021, subdivision (c) provided a *specific* rule with a reduced, 10-year period of disqualification for those convicted of *misdemeanor* offenses under section 245. In his view, subdivision (c), as the more specific statute, took precedence over the more general provisions of subdivision (a) and section 12022.1. The trial court adopted this argument and granted the writ as prayed. The Attorney General contends the trial court misconstrued these statutory provisions and improperly found them in conflict. As we shall explain, we agree with the Attorney General.

## II

"Statutory interpretation is a question of law, which appellate courts review de novo. [Citation.]" (*Nowlin* v. *Department of Motor Vehicles* (1997) 53 Cal.App.4th 1529, 1533 [62 Cal.Rptr.2d 409]; *Conrad* v. *Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1045 [55 Cal.Rptr.2d 901].) Our principal obligation, of course, is to ascertain the intent of the Legislature (*Yoshisato* v. *Superior Court* (1992) 2 Cal.4th 978, 989 [9 Cal.Rptr.2d 102, 831 P.2d 327]), a task we usually accomplish by examining the words employed by the drafters, giving them their ordinary meaning. (*People* v. *Fuhrman* (1997) 16 Cal.4th 930, 937 [67 Cal.Rptr.2d 1, 941 P.2d 1189];

[2] Although the order under section 1203.4 had the effect of withdrawing Rash's 1991 guilty plea and dismissing the misdemeanor case, that section expressly provides that orders made under its provisions do *not* provide relief from the prohibitions in section 12021: "Dismissal . . . pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person *or* prevent his or her conviction under Section 12021." (Italics added.)

[3] While Rash made these arguments at the hearing, his petition simply insisted application of the statutes would violate ex post facto prohibitions—a contention the court quickly, and properly, disposed of, and which plays no part in this appeal.

*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].)

■ In 1991, when Rash was convicted of assault with a firearm, subdivision (a) of section 12021 provided, "Any person who has been convicted of a felony under the laws of . . . California . . . *or of an offense enumerated in Section 12001.6* . . . who owns or has in his or her possession or under his or her custody or control any firearm is guilty of a felony." (Italics added.) Section 12021.1, subdivision (a) also made possession of a firearm a felony for individuals previously convicted of "any of the offenses listed in" section 12001.6. (See § 12021.1, subd. (b)(26) as amended by Stats. 1989, ch. 254, § 2, p. 1299 & Stats. 1989, ch. 1044, § 4, p. 3635.) Among the offenses specified in section 12001.6 was "[a] violation of paragraph (2) . . . of subdivision (a) of Section 245"—assault with a firearm.

Following legislative amendments made effective January 1, 1992, former subdivision (c) of section 12021 was modified and redesignated subdivision (c)(1), and a second paragraph was added as subdivision (c)(2).[4] As amended, subdivision (c) read as follows: "(1) *Except as provided in subdivision (a) or paragraph (2) of this subdivision,* any person who has been convicted of a misdemeanor violation of Section . . . 245 . . . and who, within 10 years of the conviction, owns, or has in his or her possession or under his or her custody or control, any firearm is guilty of a public offense . . . . However, *the prohibition in this paragraph* may be reduced, eliminated, or conditioned as provided in paragraph (2).

"(2) Any person, whose continued employment or livelihood is dependent on the ability to legally possess a firearm, who is subject to *the prohibition imposed by this subdivision* because of a conviction prior to the effective date of the amendments which added this paragraph to this section, at any time until January 1, 1993, may petition the court for relief *from this prohibition.* . . . It is the intent of the Legislature in enacting this paragraph to permit persons who were convicted of an offense specified in this subdivision prior to the effective date of the amendments which added this paragraph to this section to seek relief *from the prohibition imposed by this subdivision.*" (Italics added.)

Section 12021, subdivision (c)(2) thus authorizes convicted misdemeanants "who [are] subject to the prohibition imposed by [subdivision

---

[4]While Rash was convicted in 1991, we resort to the 1992 version of subdivision (c) because its provisions provided a benefit applicable to persons convicted *before* the amendments to subdivision (c) were adopted. The prohibitions in subdivision (a) and section 12021.1 are essentially the same today as they were in 1991.

(c)(1)]" to seek an order from the court modifying or eliminating "the prohibition imposed by this subdivision." To qualify for such an order, they must show their "continued employment or livelihood is dependent on the ability to legally possess a firearm." The plain meaning of these words demonstrates the Legislature intended to provide an avenue for relief *solely* to those qualifying misdemeanants who find themselves subject to the 10-year period of disability imposed by subdivision (c)(1). Thus, in order to decide whether Rash was entitled to the relief granted him by the trial court under subdivision (c)(2) and, ultimately, to the writ of mandate he procured, we must first determine whether he was subject to the 10-year prohibition set out in subdivision (c)(1). We conclude he was not.

According to its terms, the prohibition in section 12021, subdivision (c)(1) applies to persons convicted of misdemeanor assaults with deadly weapons, "[e]xcept as provided in [section 12021,] subdivision (a) or paragraph (2)" of subdivision (c). Former subdivision (a) *permanently* disables those who have been convicted of a felony *or any* "offense enumerated in Section 12001.6" —whether it be a felony or a misdemeanor—from possessing firearms.[5] Among the crimes listed in section 12001.6 are three specific subdivisions of section 245 that qualify for the permanent prohibition: "[a] violation of paragraph (2) or (3) of subdivision (a) of Section 245 or a violation of subdivision (c) of Section 245." Rash's conviction falls within this permanent prohibition.[6]

Rash's contention that section 12021, subdivision (c) is in conflict with subdivision (a) and section 12021.1 is simply incorrect. There is no conflict. By making its 10-year prohibition applicable to all persons who have suffered misdemeanor convictions under section 245 *except* as provided in subdivision (a) or subdivision (c)(2), subdivision (c)(1) defines both the class of persons subject to the 10-year rule and the class of those who are not. Section 12021, subdivision (a) permanently forecloses gun possession by persons having either felony or misdemeanor convictions for assault *with a firearm*,[7] while the limited, 10-year proscription in subdivision (c)(1) is

---

[5]In contrast to section 12021, subdivision (a), which enumerates the crimes *excepted* from subdivision (c)(1), paragraph (2) of subdivision (c) offers an *exemption* for those who otherwise would be subject to the prohibition in subdivision (c)(1).

[6]As noted above, section 12021.1 contains a nearly identical provision, permanently prohibiting possession of a firearm by any person convicted of "any of the offenses listed in" section 12001.6.

[7]While we find no logical dissonance in the provisions of sections 12021 and 12021.1, we cannot say the same for section 12001.6. Section 12001.6 defines the "violent use of a firearm." In 1988, the only section 245 offense listed in section 12001.6 was subdivision (a)(2)—assault with a firearm. But in 1989, section 12001.6 was amended to add subdivision (a)(3) and subdivision (c) of section 245 to the list of crimes involving the "violent use of a

reserved for those with misdemeanor convictions under section 245, subdivision (a)(1) (assaults with deadly weapons *other than* firearms) and various other code sections not relevant here.[8]

The language of section 12021 requires no construction.[9] Read as a whole and in context, it unmistakably excludes persons who have been convicted of violating section 245, subdivision (a)(2) from the category of individuals who can avoid the permanent firearm ban. Although Rash was convicted of a misdemeanor violation of section 245, his conviction for *assault with a firearm* under section 245, subdivision (a)(2) comes within the specific exception set out in the introductory phrase of section 12021, subdivision (c)(1). Therefore, Rash is not subject to the 10-year period of disability and could not qualify for relief from it.

While Rash does not qualify for the limited period of disqualification in section 12021, subdivision (c)(1), he *does* fall within the parameters of section 12021, subdivision (a) and section 12021.1. Both prohibit him from possessing firearms *permanently* as a consequence of his misdemeanor conviction for assault with a firearm. We therefore conclude the trial court erred by issuing its writ of mandate to the State. Rash is not entitled to reinstatement of his firearm permit.

---

firearm." Until that time, section 245, subdivision (c) dealt with assaults with firearms on police officers. That same year, however, the Legislature amended section 245 by changing subdivision (c) to subdivision (d). The new subdivision (c) addressed assaults with deadly weapons *other than a firearm* on police officers. Unfortunately, when the Legislature changed section 245, it failed to make a corresponding change to section 12001.6. So, since 1989, section 12001.6 has continued to list section 245, subdivision (c) offenses in its definition of the "violent use of a firearm," thereby including assaults on police officers with deadly weapons *other than a firearm.* Of course, the Legislature's clerical oversight does not affect the disposition of the case now before us. But the error needs to be corrected.

[8]The Legislature has, thus, chosen to differentiate between convictions involving the use, or the lack of use, of a firearm—at least in cases involving assaults with deadly weapons. Interestingly, the expansion of section 12001.6's definition of the "violent use of a firearm" in 1989 coincided with the legislative modification of section 1170.1, subdivision (h), which eliminated the courts' discretion to strike personal firearm use enhancements. (See *People* v. *Thomas* (1992) 4 Cal.4th 206 [14 Cal.Rptr.2d 174, 841 P.2d 159].) In view of the expressed legislative concern about increasing violent gun use, the distinction drawn in subdivision (c)(1) between offenses meriting a permanent prohibition as opposed to a 10-year restriction is certainly one they were entitled to draw.

[9]"It is settled law in California that if statutory language is 'clear and unambiguous there is no need for construction, and courts should not indulge in it.' (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744], internal quotation marks omitted.) Our courts have declined to apply the plain meaning of a statute only 'when it would inevitably have frustrated the manifest purposes of the legislation as a whole or led to absurd results.' (*People* v. *Belleci* (1979) 24 Cal.3d 879, 884 [157 Cal.Rptr. 503, 598 P.2d 473].)" (*People* v. *Duncan* (1990) 216 Cal.App.3d 1621, 1626 [265 Cal.Rptr. 612]; accord, *People* v. *Fuhrman, supra,* 16 Cal.4th at p. 937.) Neither impediment exists here.

The judgment is reversed and the cause remanded to the trial court with directions to enter a new and different order denying Rash's petition for writ of mandate. Appellants shall recover their costs on appeal.

Wallin, Acting P. J., and Crosby, J., concurred.