BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE GEORGE RUNNER, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:
May a hospital district organized under the Local Health Care District Law reimburse an emergency room physician employed by the district for expenses incurred in traveling to Sri Lanka and providing emergency medical care to tsunami victims?
 CONCLUSION
A hospital district organized under the Local Health Care District Law may reimburse an emergency room physician employed by the district for expenses incurred in traveling to Sri Lanka and providing emergency medical care to tsunami victims if the district reasonably determines that the performance of such services will directly assist the district in accomplishing its authorized public responsibilities.
 ANALYSIS
The Local Health Care District Law (Health Saf. Code, §§ 32000-32492; "District Law")[1] governs local healthcare districts and hospital districts (§§ 32000, 32000.1 subd. (a)). The principal purposes of these districts are to establish, maintain, and operate health facilities within their territorial limits. (See §§ 32121, 32125; Talley v. Northern San Diego Hosp.Dist. (1953) 41 Cal.2d 33, 40; 88 Ops.Cal.Atty.Gen. 106, 107, fn. 2 (2005); 88 Ops.Cal.Atty.Gen. 91, 93-94 (2005); 87 Ops.Cal.Atty.Gen. 92, fn. 1 (2004); 75 Ops.Cal.Atty.Gen. 20, 21-22 (1992); 67 Ops.Cal.Atty.Gen. 492, 492-493 (1984); 66 Ops.Cal.Atty.Gen. 13, 13-14 (1983); 55 Ops.Cal.Atty.Gen. 375, 376 (1972).) Typically, a district has an elected board of directors comprised of five members serving terms of four years each. (§ 32100.)
We are asked whether a district's board of directors may use district funds to reimburse the expenses incurred by an emergency room physician who traveled to Sri Lanka and provided emergency medical services to tsunami victims. We conclude that the board may do so if it reasonably determines that such medical care performed by the physician will directly assist the district in accomplishing its authorized public responsibilities.
As noted above, local hospital districts are formed under, and derive their authority from, the District Law. A hospital district is permitted to exercise those powers and to take those actions that are expressly authorized in the District Law or impliedly authorized therein (§ 32001), and to do "any and all other acts and things necessary to carry out [the District Law]" (§ 32121, subd. (k)). (See 67 Ops.Cal.Atty.Gen., supra, at p. 493; 30 Ops.Cal.Atty.Gen. 351, 353 (1957).) The District Law includes a "broad authority to contract" (67 Ops.Cal.Atty.Gen.,supra, at p. 492; 24 Ops.Cal.Atty.Gen. 53 (1954)), and specifically confers the power to contract with physicians "for the rendering of professional health services" (§ 32129; seeConrad v. Medical Bd. of California (1996) 48 Cal.App.4th 1038,1047; Letsch v. Northern San Diego County Hosp. Dist. (1966)246 Cal.App.2d 673, 677).[2]
Article XVI, section 6, of the California Constitution prohibits the making of "gifts" of public funds:
 "The Legislature shall have no power . . . to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever. . . ."[3]
This constitutional prohibition directly limits the authority of local hospital districts in their use of public funds. (75 Ops.Cal.Atty.Gen., supra, at pp. 24-25; see Albright v. Cityof South San Francisco (1975) 44 Cal.App.3d 866, 870.)[4]
It has long been recognized that the "gifts" prohibition of the Constitution does not apply where the expenditure, while incidentally beneficial to a private recipient, promotes a valid and substantial public purpose within the authorized mission of the public agency appropriating the funds. "It is well settled . . . that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of [section 6 of article XVI] . . . if those funds are expended for a public purpose. . . ." (California Emp. etc. Com. v. Payne
(1947) 31 Cal.2d 210, 216; see also County of Alameda v.Janssen (1940) 16 Cal.2d 276, 281; Johnston v. Rapp (1951)103 Cal.App.2d 202, 207; 75 Ops.Cal.Atty.Gen., supra, at p. 25; 68 Ops.Cal.Atty.Gen. 46, 50 (1985).) As we observed in 67 Ops.Cal.Atty.Gen. 32, 34 (1984):
 "It has been held that public credit may be extended and public funds disbursed if a direct and substantial public purpose is served and nonstate entities are benefitted only as an incident to the public purpose. [Citations.] The benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefitted therefrom. [Citations.]"
In 75 Ops.Cal.Atty.Gen. 20, supra, we noted that it was for the legislative body of a public agency to determine whether a requisite authorized public purpose would be served by the activity proposed to be funded:
 "Whether a particular program serves a public purpose is primarily a legislative determination that will not be disturbed by the courts so long as it has a reasonable basis. [Citation.] For example, in 66 Ops.Cal.Atty.Gen. 13, we said that no `gift of public funds' would occur with respect to a hospital district providing family health insurance for the members of its board of directors `since the providing of [the] insurance serves a public purpose in compensating the directors for their services performed. [Citations.]' [Citation.] In other opinions we have found the provision of employee health benefit coverage as serving a direct and substantial public purpose. [Citations.] But while we have said that providing incentives for the retention of employees and increasing their efficiency would serve a public purpose [citations], that justification is not without bounds under the Constitution. [Citation.]" (Id. at pp. 24-25.)
We recently applied these principles in considering whether, under the terms of Government Code section 36514.5,[5] a city council could reimburse a council member for his expenses incurred in attending the Governor's inauguration. (87 Ops.Cal.Atty.Gen. 164 (2004).) We concluded that reimbursement was permissible if certain conditions were met:
 "It must be emphasized . . . that a direct connection must be established between the attendance at the Governor's inauguration and the performance of official duties, such as lobbying for passage of legislation beneficial to the city.
 ". . . In 61 Ops.Cal.Atty.Gen. 478, 480 (1978), we concluded that members of boards within the Department of Consumer Affairs may attend conferences as part of their `official duties' under the terms of Business and Professions Code section 103, given the `clear nexus' between such attendance and the `performance of the [members'] statutorily mandated services.' Similarly, in Madden v. Riley (1942) 53 Cal.App.2d 814, 823, the court stated that attendance at a conference could be classified as `state business' if `some direct connection' could be established. . . .
 "The facts in each case must be carefully examined for a proper resolution in applying the terms of section 36514.5. It is for the city council to exercise its sound discretion in reviewing a claim for expense reimbursement.
 "If the city council has approved the council member's attendance at the Governor's inauguration prior to the event, the council's verification of the member's expense claim will be fairly limited in scope. Payment of expense would be appropriate where the council member has performed the official duties that the council has approved in its authorization of the travel. [Citations.]
 "Where, on the other hand, the council member seeks reimbursement of expenses incurred without having obtained prior council authorization to attend the Governor's inauguration, a more extended inquiry must be made by the city council. Under such circumstances, relevant questions for the council member might include a number of subjects. For example, was the invitation to attend the inauguration extended to the council member in his official capacity as a representative of the city or was it extended to him in his personal capacity as a campaign contributor or for some other reason? What official duties were performed by the council member at the inauguration? What benefit did the city receive from the council member's attendance? [Citations.]" (Id. at pp. 166-167.)[6]
As in our 2004 opinion, we find that it is for the district's board of directors to determine to what extent, if any, the district's authorized public purposes will be served by the activities undertaken in Sri Lanka for which reimbursement is proposed. (See 64 Ops.Cal.Atty.Gen. 478, 481 (1981).) The answers to a number of questions will prove critical in any inquiry made by the board. For example, in what specific activities did the physician participate, and where and what specific medical services did he perform? Under whose auspices were the services performed, and to what extent were the services documented? Will the district be expected to respond to natural disasters resulting in the need for similar emergency medical care? Did the physician's performance of medical services improve his abilities to perform emergency services on behalf of the district? Will the physician train other physicians employed by the district in dealing with massive emergency medical needs, and will such training improve the skill and competence of district employees with regard to the medical services they perform for district residents? (See e.g., 73 Ops.Cal.Atty.Gen. 296, 301 (1990); 64 Ops.Cal.Atty.Gen., supra, at p. 482; 61 Ops.Cal.Atty.Gen. 303, 305-306 (1978).) Because the board did not approve the travel reimbursement prior to the physician's trip to Sri Lanka, an extended inquiry must be undertaken. (87 Ops.Cal.Atty.Gen.,supra, at p. 167.) All the relevant facts require examination (id. at p. 166) to determine whether the district has received a benefit which it did not have previously and which is within the scope of its mission.
We conclude that a hospital district organized under the District Law may reimburse an emergency room physician employed by the district for expenses incurred in traveling to Sri Lanka and providing emergency medical care to tsunami victims if the district reasonably determines that the performance of such services will directly benefit the district in accomplishing its authorized public responsibilities.
[1] All references hereafter to the Health and Safety Code are by section number only.
[2] We note that a state or public agency and its staff may render emergency aid to a sister state or agency pursuant to a mutual aid compact under which each participating state or agency benefits from the promise of reciprocal assistance should the need arise. (See Gov. Code, §§ 177-178.5 [Interstate Civil Defense and Disaster Compact], 179-179.5 [Emergency Management Assistance Compact], §§ 8615-8619 [mutual aid among cities, counties, state agencies, and political subdivisions]; 78 Ops.Cal.Atty.Gen. 171, 174 (1995); see also, §§ 8550-8668 [California Emergency Services Act].) Here, the physician's travel to Sri Lanka was a voluntary choice not undertaken pursuant to a mutual aid agreement.
[3] Because the proposed travel reimbursement would not constitute compensation for the physician's performance of medical services in Sri Lanka on behalf of the district and for which he was previously compensated by the district, the reimbursement would fall outside the constitutional prohibition against the furnishing of "extra compensation or extra allowance." (See Cal. Const., art. IV, § 17 ["The Legislature has no power to grant, or to authorize a city, county, or other public body to grant, extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part . . ."]; Collins v. Riley (1944)24 Cal.2d 912, 917; Seymour v. Christiansen (1991) 235 Cal.App.3d 1168,1173, 1178; 73 Ops.Cal.Atty.Gen., supra, at p. 303; 65 Ops.Cal.Atty.Gen. 66, 68-71 (1982).)
[4] Various remedies and penalties are applicable with respect to the unauthorized expenditure of public funds. (See, e.g., Code Civ. Proc. § 526a; Gov. Code, § 8314; Pen. Code, § 424; 83 Ops.Cal.Atty.Gen. 124, 128-131 (2000).)
[5] Government Code section 36514.5 states: "City councilmen may be reimbursed for actual and necessary expenses incurred in the performance of official duties."
[6] Where the use of public funds is deemed appropriate, the actual amount of the funds to be spent must be carefully considered. (See 73 Ops.Cal.Atty.Gen., supra, at p. 304.)