[No. D037272. Fourth Dist., Div. One. June 4, 2001.]

ALBERT E. BARNETT et al., Plaintiffs and Appellants, v. FIREMAN'S FUND INSURANCE COMPANY, Defendant and Respondent.

---

**COUNSEL**

Zimmerman, Koomer, Connolly & Finkel, Michael D. Koomer and Scott Z. Zimmerman for Plaintiffs and Appellants.

Mower, Koeller, Nebeker, Carlson & Haluck, Jon R. Mower and John R. Armstrong for Defendant and Respondent.

---

**OPINION**

**McDONALD, J.**—In late 1996 and early 1997 MedPartners, Inc. (MedPartners), and a different entity, Southern California Medical Corporation (SCMC), filed lawsuits against appellants Albert E. Barnett, Gloria Mayer (G. Mayer) and Thomas Mayer (T. Mayer) (the underlying action). In the underlying action, MedPartners and SCMC alleged appellants engaged in a variety of misconduct, including making disparaging remarks about them. Appellants tendered the defense of the underlying action to respondent Fireman's Fund Insurance Company (Fireman's), asserting they were additional insureds under a comprehensive general liability policy (the CGL policy) issued by Fireman's to MedPartners. Fireman's rejected the tender.

In the present lawsuit, appellants alleged Fireman's refusal to defend and indemnify them in the underlying action breached its obligations under the CGL policy. Fireman's demurrer to the complaint argued appellants were not entitled to a defense or indemnity because (1) there was no possibility appellants were acting in an insured capacity when they committed the conduct alleged in the underlying action and (2) the conduct alleged in the underlying action was not covered by the CGL policy. The trial court sustained the demurrer without leave to amend, and this appeal followed.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Facts of the Underlying Action*

 Because this matter comes before us from a judgment of dismissal following the sustaining of a demurrer without leave to amend, our factual

background accepts as true the facts alleged in the complaint, together with facts that may be implied or inferred from those expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) We do not, however, accept the truth of contentions or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Additionally, to the extent the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits. (*Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 785 [256 P.2d 947]; *Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627 [272 Cal.Rptr. 623].)

Barnett is a physician who founded and owned SCMC, a professional medical corporation that operated an integrated health care delivery system (the system) providing primary and specialty medical services and inpatient and outpatient hospital services under capitated contracts with health maintenance organizations. In November 1995 SCMC entered into a contract with Caremark Physician Services, Inc. (Caremark) under which Caremark managed the operations of the system on behalf of SCMC, but reserved to SCMC the exclusive control over all decisions relating to the practice of medicine. This reservation was required to comply with California's prohibition against the corporate practice of medicine. (See generally *Conrad v. Medical Bd. of California* (1996) 48 Cal.App.4th 1038, 1042-1043 [55 Cal.Rptr.2d 901].)

In 1996 MedPartners, a large physician practice management company, acquired Caremark. Following the acquisition Barnett and G. Mayer became executive officers of MedPartners and T. Mayer became an employee of MedPartners. MedPartners is the named insured under the CGL policy issued by Fireman's.

After MedPartners acquired Caremark, MedPartners made fundamental changes in the management and organizational structure of the system. Appellants expressed concern to MedPartners and others that, under the changes implemented by MedPartners, the system would no longer be supervised and directed by physicians concerned and entrusted with providing quality care to patients; instead the system would be directed by a corporation more concerned with corporate revenues than with the benefits provided to patients, thereby adversely affecting patient care and violating California's prohibition against the corporate practice of medicine. Appellants sought to advance the interests of MedPartners by urging MedPartners to comply with California's prohibition against the corporate practice of medicine.

In November 1996 MedPartners terminated appellants as officers and employees of MedPartners. One reason for the terminations was to retaliate against appellants for their complaints about MedPartners' noncompliance with the prohibition against the corporate practice of medicine. MedPartners then filed the underlying action against appellants; SCMC subsequently filed a complaint in intervention in the underlying action. MedPartners' lawsuit alleged, among other things, that appellants told numerous persons (within and outside of the MedPartners organization) that MedPartners' methods of doing business were flawed and would result in MedPartners' failure, and made other representations that disparaged and damaged MedPartners. MedPartners' complaint pleaded causes of action for breach of fiduciary duty, intentional interference with contractual relations, breach of the implied covenant of good faith and fair dealing, and fraud.

SCMC's complaint in intervention alleged similar misconduct by appellants and that appellants made disparaging and damaging remarks about SCMC. SCMC's complaint in intervention pleaded claims for declaratory relief and for intentional interference with contractual relations.

Appellants asked Fireman's to defend and indemnify them in connection with both MedPartners' complaint and SCMC's complaint in intervention. Appellants asserted they were additional insureds under the CGL policy issued to MedPartners, and that the allegations of the complaint created a potentially covered claim for *personal injury* and/or *advertising injury* within the meaning of the CGL policy. Fireman's declined to defend or indemnify appellants.

B. *The Present Action*

Appellants filed this action against Fireman's, alleging its refusal to defend and indemnify them in the underlying action breached the contractual and good faith obligations owed to them under the CGL policy. Fireman's demurrer to appellants' complaint asserted two arguments. First, Fireman's argued appellants were not insureds under the CGL policy because Barnett and G. Mayer qualified as insureds only "with respect to their duties as [MedPartners] officers," and T. Mayer qualified as an insured only "for acts within the scope of [his] employment." Fireman's argued that under *Milazo v. Gulf Ins. Co.* (1990) 224 Cal.App.3d 1528 [274 Cal.Rptr. 632] (*Milazo*), acts by an additional insured that are antagonistic or hostile to the business interests of the named insured cannot be acts "within the scope of their employment" or "with respect to their duties as officers" of the named insured. Second, Fireman's argued that in the underlying action MedPartners and SCMC did not allege facts suggesting any possibility that appellants'

alleged misconduct would be a covered act within the personal injury or advertising injury coverages of the CGL policy.

Appellants argued that CGL policy contained no language barring coverage under the circumstances alleged in the underlying action, and that *Milazo* was distinguishable because it involved insuring clauses and factual circumstances different from those present here. Appellants also argued that even if *Milazo* excluded coverage for MedPartners' lawsuit, *Milazo*'s rationale had no application to a third party action like the SCMC lawsuit. Finally, appellants argued that in the underlying action MedPartners and SCMC alleged facts that could support liability for defamation within both the personal injury and the advertising injury coverages of the CGL policy.

The trial court sustained Fireman's demurrer without leave to amend and dismissed appellants' complaint.[1] This appeal argues the trial court's ruling was in error.

## II

### STANDARD OF REVIEW

On appeal from a judgment dismissing an action after sustaining a demurrer we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded, but not the truth of contentions, deductions or conclusions of law. We reverse if the plaintiff has stated a cause of action under any legal theory. (*Walker v. Allstate Indemnity Co.* (2000) 77 Cal.App.4th 750, 754 [92 Cal.Rptr.2d 132].) However, we affirm the judgment if any one of the several grounds of demurrer is well taken. (*Weikel v. TCW Realty Fund II Holding Co.* (1997) 55 Cal.App.4th 1234, 1244 [65 Cal.Rptr.2d 25].) We apply de novo review to decide whether it was proper to sustain the demurrer because that ruling involved construction of the CGL and its application to the facts alleged in the underlying lawsuits. (*Ray v. Farmers Ins. Exchange* (1988) 200 Cal.App.3d 1411, 1415-1416 [246 Cal.Rptr. 593].)

---

[1]The trial court ruled appellants were not insureds and therefore could not state a cause of action against Fireman's for breach of contract. This ruling also precluded appellants from stating a cause of action against Fireman's for breach of the covenant of good faith and fair dealing. (*Republic Indemnity Co. v. Schofield* (1996) 47 Cal.App.4th 220, 227 [54 Cal.Rptr.2d 637] [persons who are not insureds cannot maintain action for breach of the covenant of good faith and fair dealing].) We conclude below that appellants have stated facts sufficient to constitute a cause of action for breach of contract, and Fireman's raises no independent argument that the order sustaining the demurrer to appellants' cause of action for breach of the covenant of good faith and fair dealing was proper. Accordingly, we must reverse the trial court's ruling as to appellants' breach of the covenant of good faith and fair dealing claim for the same reasons that support our reversal of the trial court's ruling as to appellants' breach of contract action.

## III

### PRINCIPLES GOVERNING DUTY TO DEFEND

■ The interpretation of the meaning of an insurance policy and the scope of coverage are questions of law. (*Western Mutual Ins. Co. v. Yamamoto* (1994) 29 Cal.App.4th 1474, 1481 [35 Cal.Rptr.2d 698].) Whether a third party action asserts a potentially covered claim under the policy triggering the duty to defend requires us to interpret the language of the insuring agreement and is a question of law. (*Alex Robertson Co. v. Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338, 342-343 [10 Cal.Rptr.2d 165] [potential for coverage under insuring language presents issue of law]; *Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.* (1996) 42 Cal.App.4th 121, 125-126 [49 Cal.Rptr.2d 567] [potential for coverage in light of policy exclusions presents question of law]; *Union Oil Co. v. International Ins. Co.* (1995) 37 Cal.App.4th 930, 936 [44 Cal.Rptr.2d 4] [whether clause is ambiguous and whether insured has objectively reasonable expectation of coverage are questions of law subject to de novo review on appeal].)

Fireman's does not deny that the CGL policy covers liability of its insureds for defamation and requires Fireman's to defend appellants against a lawsuit in which they were potentially liable for defamatory statements made in their insured capacities.[2] ■ An insurer must defend any action that seeks damages potentially within the coverage of the policy. (*Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) Conversely, the insurer owes no duty to defend when the third party complaint " 'can by no conceivable theory raise a single issue [that] could bring it within the policy coverage.' " (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153] [quoting *Gray, supra*, at p. 276, fn. 15], italics omitted.) However, to be entitled to a defense, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot." (*Montrose, supra*, at p. 300, italics omitted.) The determination of whether the duty to defend exists is made initially by comparing the allegations in the third party

---

[2]Barnett and G. Mayer qualified as insureds only "with respect to their duties as [MedPartners] officers," and T. Mayer qualified as an insured only "for acts within the scope of [his] employment" with MedPartners. However, there is no dispute that if T. Mayer (while acting within the scope of his employment with MedPartners) or Barnett or G. Mayer (while discharging their duties as officers of MedPartners) defamed a third party claimant and were sued for defamation, Fireman's would be obligated to defend and indemnify them in the defamation suit.

complaint with the terms of the policy, and considering extrinsic facts that reveal a possibility the claim may be covered by the policy. The existence of the duty to defend turns on all facts known by the insurer at the inception of the third party lawsuit. (*Id.* at p. 295.) If the facts alleged by the third party or known to the insurer create any potential for indemnity under the policy, the insurer must provide a defense even though noncovered acts are also alleged by the third party action. (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1084 [17 Cal.Rptr.2d 210, 846 P.2d 792].)

In this case, we address two issues. First, assuming appellants were insureds under the CGL policy, did the underlying action assert a potentially covered claim against them; and second, did appellants qualify as insureds under the CGL policy?

IV

ANALYSIS

A. *The Defamation Claims Fall Within the Personal Injury Coverage*[3]

The personal injury coverage of the CGL policy provides coverage for "injury . . . arising out of one or more of the following offenses: . . . d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." This clause covers claims against the insured for defamation. (Cf. *Truck Ins. Exchange v. Bennett* (1997) 53 Cal.App.4th 75, 83-86 [61 Cal.Rptr.2d 497].) Appellants argue the underlying action raised a potentially covered claim for defamation because the complainants alleged that appellants told numerous persons that MedPartners' methods of doing business were flawed and would result in MedPartners' failure, and made other representations that disparaged and damaged MedPartners and SCMC.

---

[3]Appellants also suggest the nascent defamation claims are covered under the advertising injury coverage provided by the CGL policy. However, the advertising injury section provides coverage if the injury was "caused by an offense committed in the course of advertising your goods, products or services." Most courts have limited the scope of this coverage by the common sense understanding that advertising activities mean widespread promotional activities directed to the public at large (see *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1276, fn. 9 [10 Cal.Rptr.2d 538, 833 P.2d 545]). Appellants present neither argument nor authority supporting a contrary interpretation of this coverage. Moreover, although appellants peremptorily argue that it is possible T. Mayer defamed MedPartners during widespread promotional activities directed to the public at large, they cite *nothing in the record* supporting this possibility and do not attempt to explain how an employee could defame his or her employer during promotional activities and nevertheless be deemed to have been acting within the scope of employment. Accordingly, we decline to further address this suggestion. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [33 Cal.Rptr.2d 838].)

These allegations, argue appellants, trigger the personal injury coverage of the CGL policy.

Fireman's argues, however, that personal injury coverages of liability policies apply only to acts enumerated by the policy as covered offenses. (*Fibreboard Corp. v. Hartford Accident & Indemnity Co.* (1993) 16 Cal.App.4th 492, 511 [20 Cal.Rptr.2d 376].) It cites *Lindsey v. Admiral Ins. Co.* (N.D. Cal. 1992) 804 F.Supp. 47, 52 for the proposition that the insurer has no obligation to defend unless the underlying complaint alleges all of the elements necessary to establish an enumerated offense. From this foundation, Fireman's argues the complaints in the underlying action did not allege all of the elements necessary to state a cause of action for defamation, and therefore it had no duty to defend the underlying action.[4]

However, the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party. (*CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 606-607 [222 Cal.Rptr. 276], disapproved on another point in *Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at pp. 296-298.) The complaints in the underlying action alleged appellants told third persons that MedPartners' methods of doing business were flawed and would result in its failure and made other representations that disparaged and damaged MedPartners and SCMC. These allegations trigger at least a potential for coverage under the personal injury coverage for defamation provided by the CGL policy.[5]

---

[4]Fireman's also cites *Gunderson v. Fire Ins. Exchange* (1995) 37 Cal.App.4th 1106, 1114 [44 Cal.Rptr.2d 272] as holding that, where the underlying complaint does not allege a covered claim, an insured may not manufacture coverage by speculating about extraneous facts or ways in which the third party claimant might amend its complaint at some future date to bring the claim within the policy's coverage. From this predicate, Fireman's argues it had no duty to defend because the third party complaint did not allege appellants' liability for defamation and required speculation about extraneous facts that the third party might or might not assert by amendment. However, *Gunderson* recognized that the test for the duty to defend is whether the facts known to the insurer at the time of tender of the defense, both from the allegations on the face of the third party complaint and from extrinsic information available to it at the time, created a potential for coverage under the terms of the policy. (*Id.* at p. 1114.) *Gunderson* held merely that on the facts before it the third party complaint alleged claims for which there was no possibility of coverage, there were no extrinsic facts known at the time of the tender that would give rise to a covered claim, the extrinsic facts cited by the insured would not, even if true, have established a covered claim, and the insurer did not have a continuing duty to investigate whether there was a potential for coverage after making an informed decision that there was no potential for coverage. (*Id.* at pp. 1115-117.)

[5]Fireman's asserts a defamation claim requires that the plaintiff allege the defendant made statements that are published, untrue, impugn the plaintiff's integrity, and are statements of fact rather than opinion, and that these elements were not pleaded in the underlying action. In California, however, the plaintiff need only plead that the defendant published specified types

B. *The Complaint Stated Sufficient Facts to Allege Fireman's Breached a Duty to Defend Barnett and G. Mayer Against MedPartners' Complaint*

█ Our discussion of the coverage afforded by the CGL policy to appellants for any defamation claim treated the underlying action as having been filed by parties with no relationship to the CGL policy. However, the underlying action by MedPartners is a claim by the named insured under the CGL policy. Appellants are covered as additional insureds under that policy (subject to any applicable exclusionary language) to the extent they were engaged in discharging their duties as corporate officers or acted within the scope of their employment.

When a person seeks coverage as an additional insured under a policy issued to a corporation as the named insured, an officer or employee of the corporation is entitled to a defense if he or she was acting in an insured capacity when allegedly engaged in the injury-producing conduct. (See generally *Olson v. Federal Ins. Co.* (1990) 219 Cal.App.3d 252, 260-262 [268 Cal.Rptr. 90].) Section II of the CGL policy identifies who qualifies as additional insureds under the CGL policy; it provides that executive officers of MedPartners are "insureds, but only with respect to their duties as your officers . . . ." The allegations of the complaint, which we accept as true on demurrer,[6] were that Barnett and G. Mayer "[a]t all times relevant . . . were executive officers of MedPartners, acting with respect to their duties as MedPartners executive officers," and that they "were acting to advance the interests of MedPartners" when they expressed concerns that the changes implemented by MedPartners would violate California's prohibition against the corporate practice of medicine. These allegations, if true, could show that Barnett's and G. Mayer's defamatory statements (e.g., that MedPartners' methods of doing business were flawed and would result in MedPartners' failure and other representations that disparaged and damaged MedPartners) were made in their capacities as executive officers seeking to discharge their duties to assure that MedPartners fulfilled its legal obligations. Accordingly, there exists a potential that Barnett and G. Mayer were acting in an insured capacity when they allegedly engaged in the injury-producing conduct, and

---

of defamatory statements; the plaintiff need not specially allege the statements were false. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 694-696, pp. 154-156.) The underlying complaint alleged publication to third persons, and the content of the statements were allegedly disparaging. These allegations sufficed to give rise to a potentially covered claim.

[6]Fireman's argues that a court does not on demurrer accept as true allegations contradicted by exhibits attached to the complaint, but makes no effort to demonstrate the relevance of this principle. Fireman's does not explain how the exhibits contradict appellants' allegation that they were acting as officers or employees seeking to further the interests of their corporation at the time of making the statements.

therefore Barnett and G. Mayer have stated a cause of action against Fireman's for breach of the duty to defend the MedPartners' complaint.

However, the claim by T. Mayer stands on a different footing because, unlike the protection afforded to officers, the *employee* subdivision of section II of the CGL policy that extends coverage to T. Mayer as an employee of MedPartners expressly excludes or limits coverage based on the identity of the party making the claim. The *employee* section (§ II, subd. 2.a.), which covers employees "for acts within the scope of their employment," specifies in pertinent part that "no employee is an insured for: [¶] . . . [b]odily injury or *personal injury:* [¶] . . . [t]o *you* . . . ." (Italics added.) Because defamation is covered only by virtue of the personal injury coverages of the CGL policy, the limitation contained in section II, subdivision 2.a.(1)(a) excludes from coverage any claim against an employee for defaming the named insured. Because the only covered offense potentially raised by the MedPartners' complaint against T. Mayer was that he defamed MedPartners, the policy exclusion eliminates any potential that T. Mayer would be covered for MedPartners's claim against him.

Fireman's cites several cases to support its argument that when an individual is an additional insured under a policy issued to an entity and the entity sues the individual for conduct detrimental or injurious to the entity, as a matter of law there can be no duty to defend under the primary insured's policy. However, the cases cited by Fireman's do not support that broad proposition. The principal case cited by Fireman's is *Milazo, supra,* 224 Cal.App.3d 1528, in which a partnership was insured under a comprehensive general liability policy, and a partner was an additional insured " 'with respect to his liability as [a partner].' " (*Id.* at pp. 1535-1536, italics omitted.) The partnership sued Milazo, an individual partner, alleging that he breached his fiduciary duty by misappropriating a partnership opportunity; the insurer defended Milazo under a reservation of rights. The jury verdict held Milazo liable for misappropriating the partnership opportunity, and the issue on appeal was whether the insurer was obligated to indemnify Milazo. (*Id.* at pp. 1531-1533.) The *Milazo* court, after concluding the policy covered the partnership's liabilities and provided coverage to Milazo as an additional insured only to the extent he had derivative liability for the partnership's liabilities, held there was no obligation to indemnify him in his insured capacity. The *Milazo* court reasoned that a partner who acts to misappropriate a partnership asset or opportunity is necessarily engaged in conduct adverse to the partnership, and because the partnership entity could not be liable for such misconduct, Milazo could have no derivative liability and

therefore the insurance did not cover the claim against him.[7] (*Id.* at pp. 1537-1539.)

*Milazo* is distinguishable from the instant case in important aspects. First, unlike the insuring language that the *Milazo* court construed as providing coverage for only derivative liability, the insuring language of the CGL policy does not appear to condition coverage for executive officers on the requirement that the corporation have direct liability for their misconduct. Second, and more importantly, the *Milazo* court evaluated the duty to indemnify after a trial that established the additional insured's misconduct was necessarily committed in his individual capacity.[8] In contrast, Fireman's duty to defend is tested by whether there was any potential that Barnett's and G. Mayer's alleged conduct was committed with respect to their duties as executive officers. (Accord, *Farr v. Farm Bureau Ins. Co. of Nebraska* (8th Cir. 1995) 61 F.3d 677, 681, fn. 4 [test for coverage is not whether slander falls within scope of duties of officer, but whether officers "were acting on behalf of the corporation (as opposed to themselves) when they engaged in the alleged behavior"].) Because the complaint alleges Barnett and G. Mayer were seeking to further the corporate interests when they criticized MedPartners, it is possible they were engaged with respect to their duties as executive officers when they committed the alleged misconduct and therefore a potential for coverage exists.

The other California cases cited by Fireman's do not support Fireman's broad contention. For example, in *Olson v. Federal Ins. Co., supra,* 219

---

[7]The *Milazo* court also noted that a partner who acts to misappropriate a partnership asset or opportunity is necessarily engaged in conduct contrary to, rather than on behalf of, the partnership, and thus necessarily was acting in his capacity as an individual rather than as a partner. (*Milazo, supra,* 224 Cal.App.3d at pp. 1531-1533.)

[8]The procedural posture of the present case likewise distinguishes it from the recent decision in *Lomes v. Hartford Financial Services Group, Inc.* (2001) 88 Cal.App.4th 127 [105 Cal.Rptr.2d 471]. In *Lomes,* the named insured corporation sued the plaintiff alleging, in part, that he had defamed it during conversations with a lender in April 1996; at the time of the defamation, he had already been fired as an officer but had remained a director of the corporation. The insurer declined to defend the plaintiff (an additional insured) in the corporation's lawsuit; the plaintiff then sued the insurer (the coverage lawsuit). In the papers filed in support of cross-motions for summary adjudication in the coverage lawsuit, the undisputed evidence included admissions by the plaintiff that, at the time of the defamatory comments, he was not an officer of the corporation, he was working elsewhere, and he had not performed *any* services for the corporation after August 1995. Because he clearly had not been acting as an officer at the time of the defamation, and because the *Lomes* court concluded he could not have been acting as a director because there was no evidence the board had authorized him to contact the lender, he was not acting in any insured capacity. (*Id.* at pp. 132-133.) *Lomes*'s analysis revolved around the absence of any evidence that the plaintiff was discharging his corporate duties when he defamed the entity. Here, however, we must assume the truth of Barnett's and G. Mayer's allegations that they were acting as officers seeking to further the interests of the corporation.

Cal.App.3d 252, the plaintiff argued he was entitled to a defense as an additional insured under a policy issued to Olson Farms; the court rejected the claim because the dispute did not arise out of his conduct as a director of Olson Farms but instead involved a dispute over the management of a different corporation. (*Id.* at pp. 260-262.) In *Plate v. Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115 [275 Cal.Rptr. 667], the court did not consider the interpretation of an insurance policy or the duty to defend; the issue was whether the corporate agents were entitled to indemnity from their employer under Corporations Code section 317. In *Transamerica Ins. Co. v. Sayble* (1987) 193 Cal.App.3d 1562 [239 Cal.Rptr. 201], the court held merely that an errors and omissions policy issued to an attorney required allegations of negligence while rendering services to his clients and did not provide coverage for a dispute arising from dissolution of a law partnership. Finally, in *Republic Indemnity Co. v. Schofield, supra,* 47 Cal.App.4th 220, the court held only that a workers' compensation policy did not protect the employer's officers against a claim for constructive discharge because the policy insured the employer, and the officers were not the employer.

The authorities from other jurisdictions cited by Fireman's are not persuasive. In *Farr v. Farm Bureau Ins. Co. of Nebraska, supra,* 61 F.3d 677, the named insured corporation sued the plaintiffs (former directors or officers of the corporation), alleging they breached their fiduciary duty by trying to thwart a sale of the corporation. The insurer rejected the plaintiffs' tender of the defense to the insurer, the plaintiffs sued the insurer, and the trial court ruled after a bench trial that there was no duty to defend the plaintiffs under a comprehensive general liability policy worded similarly to the CGL policy. (*Id.* at pp. 678-679.) *Farr* noted the officers were insureds " 'only with respect to their duties' " as officers, and concluded the insurer had no duty to defend because an officer cannot be acting with respect to his or her duties when that fiduciary duty to the corporation is breached, and all torts pleaded against the officers in the underlying action necessarily involved breaching their fiduciary obligations to the corporation. (*Id.* at pp. 680-681.) The *Farr* court buttressed its conclusion by noting the purpose and intent of the policies were to cover the corporation's liability to third persons rather than internal disputes among shareholders. To the extent this observation contains an implicit interpretation of the policies in *Farr* as providing protection to officers only when the claim against them is lodged by third persons, the CGL policy does not limit coverage for officers based on the identity of the claimant.

We decline to apply *Farr* to this case. First, *Farr* is silent on what precise conduct the officers in *Farr* were accused of committing and "assume[d] without deciding that the [conduct] giving rise to the [underlying lawsuit]

would satisfy the policy's definition of 'personal injury.' " (*Farr v. Farm Bureau Ins. Co. of Nebraska, supra,* 61 F.3d at p. 680.) This assumption contributed to an incomplete, and in our opinion, erroneous, analysis of the duty to defend because deciding whether an officer's conduct occurred with respect to his duty as an officer cannot be determined in a vacuum. Although the (undisclosed) conduct of the officers in *Farr* may have been outside the duties of an officer, Fireman's cites no authority suggesting that an officer who seeks to further the interests of his corporation by criticizing management changes, or by erroneously suggesting these changes could violate the law or result in the failure of the corporation, is as a matter of law acting outside of his duties or in breach of his fiduciary obligations. Second, a central tenet of *Farr's* analysis that "each of the torts pleaded [in the underlying action] requires a breach of one or more fiduciary duties" shows the *Farr* court focused on the causes of action pleaded rather than the operative misconduct, which is not the approach used in California for purposes of evaluating the duty to defend. (*CNA Casualty of California v. Seaboard Surety Co., supra,* 176 Cal.App.3d at pp. 606-607 [it is facts, not a technical, legal cause of action pleaded by third party, that give rise to a potential for a covered claim].) Finally, *Farr* states that the insurance policies were intended to protect officers when they are "properly carrying out their duties . . . and are designed to protect the officer who acts to advance the business interests of the corporation, not the officer who acts in a manner that is antagonistic toward the corporation's business interests."[9] (*Farr v. Farm Bureau Ins. Co. of Nebraska, supra,* 61 F.3d at p. 681.) The *Farr* court concluded the officers there were not acting in an insured manner.[10] Here, Barnett and G. Mayer alleged they *were* carrying out their duties as officers and *were* acting to further MedPartners' interests.

We conclude that, at least for purposes of demurrer, Barnett and G. Mayer, but not T. Mayer, have stated facts sufficient to state a cause of action against Fireman's for breach of the duty to defend them against MedPartners' complaint in the underlying action.

[9]This observation was confirmed when the *Farr* court, rejecting the insurer's claim that there could be no coverage because defamation is not within the scope of an officer's duties, stated that: "this is not the proper inquiry. Rather, the proper inquiry is whether [the officers] were acting on behalf of the corporation (as opposed to themselves) when they engaged in the alleged behavior." (*Farr v. Farm Bureau Ins. Co. of Nebraska, supra,* 61 F.3d at p. 681, fn. 4.)

[10]The other out-of-state authority, *Winther v. Valley Ins. Co.* (1996) 140 Or.App. 459 [915 P.2d 1050], is less persuasive than *Farr.* There, the court concluded that the language of the policy, providing coverage " 'only with respect to the conduct of your business,' " covered only liabilities arising out of activities necessary or incidental to buying and selling the goods and services sold by the entity, and that disputes between partners related to their rights in the entity were not part of the " 'conduct of [the] business.' " (*Id.* at p. 1052, italics omitted.) *Winther* has no application to either the policy language or the conduct of the officers in this case.

### C. *The Complaint Stated Sufficient Facts to Allege Fireman's Breached a Duty to Defend All Appellants Against SCMC's Complaint*

■ Fireman's does not dispute that the CGL policy insures appellants against claims for defamation made by third parties if appellants were acting in their insured capacity at the time the alleged defamatory comments were made. Accordingly, if Barnett and G. Mayer were sued for defaming a third party while executing their "duties as [MedPartners] officers," or if T. Mayer was sued for defaming a third party while "act[ing] within the scope of [his] employment," Fireman's would have a duty to defend and indemnify appellants. Both elements are adequately alleged here. First, in the underlying action, the SCMC complaint alleged facts creating a potential claim for defamation against appellants. Second, appellants' complaint alleged they were at all relevant times acting with respect to their duties as MedPartners' executive officers or within the scope of their employment by MedPartners.[11]

Fireman's argues SCMC cannot be treated as a third party claimant because SCMC, as a *subsidiary* of a named insured under the CGL policy,[12] is deemed to be an additional named insured under the CGL policy, and therefore the same analysis applicable to the duty to defend MedPartners' claim should be applied to the duty to defend SCMC's claim. However, the CGL policy specifies a subsidiary of a named insured corporation qualifies as an additional named insured under the CGL policy only if a series of conditions are met. One of the conditions is that the specifically named insured parent corporation owns "a controlling interest in [the subsidiary] of greater than 50 [percent] of the stock or assets." There are no allegations or extrinsic facts that establish SCMC bears the requisite relationship to Caremark that would qualify SCMC as an additional named insured, and we therefore reject Fireman's claim that SCMC was a named insured, excusing Fireman's from its duty to defend appellants against SCMC's

---

[11]Fireman's argues it had no duty to defend because the SCMC lawsuit demonstrates SCMC sought recovery against Barnett for acts he committed as an owner or officer of SCMC, and sought recovery against the Mayers as Barnett's coconspirators, rather than for acts they committed as officers or employees of MedPartners. Although the SCMC complaint does allege misfeasance by Barnett as an owner or officer of SCMC, it does not renounce any claims it had against either Barnett or the Mayers for acts they may have committed as officers or employees of MedPartners. (*Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1084 [where facts alleged by the third party create any potential for indemnity under the policy, insurer must provide a defense even though noncovered acts are also alleged by the third party].)

[12]Caremark was added as a named insured to the CGL policy. The precise relationship between Caremark and SCMC is hazy: the MedPartners' complaint characterized SCMC as an "indirect subsidiary" of Caremark, and the SCMC complaint labeled their relationship as a "Friendly PC or "indirect subsidiary" of Caremark.

claim. (*Montrose Chemical Corp. v. Superior Court, supra,* 6 Cal.4th at p. 300 [to be entitled to a defense "the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*"], original italics.)

## DISPOSITION

The judgment is reversed. Appellants are entitled to costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 29, 2001. Kennard, J., was of the opinion that the petition should be granted.