Filed 3/6/13  Riggio v. GMAC Mortgage CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAYE RIGGIO et al., | D061400 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2010-0062660-CU-OR-NC) |
| GMAC MORTGAGE, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Affirmed.

Appellants Jaye Riggio and John McKenna, also known as Sean McKenna, self-represented litigants, appeal from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer to their complaint filed against respondents GMAC Mortgage, LLC (GMAC), MERSCORP, Inc. (MERS)[1], The Bank of

---

1      In this opinion, MERS refers to both MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc.

New York Mellon Trust Company, N.A. (Bank) and Executive Trustee Services, LLC (ETS).[2]  Appellants contend the court erred because:  (1) ETS, the "alleged trustee," violated the procedural requirements for nonjudicial foreclosures; (2) there was no valid substitution of trustee; (3) the foreclosure sale of their house is void because the trustee was not properly named in the substitution of trustee as required by Civil Code[3] section 2924, et seq.; (4) Bank was never a bona fide purchaser; therefore, the foreclosure sale is void; (5) the trustee's deed upon sale is deficient because it recites conflicting facts; (6) the statements made in the notice of default created a conflict of interest and denied appellants protections guaranteed under section 2924 et seq.; (7) there was no final adjudication of the parties' rights under the deed of trust because the predicate sale is void; and (8) the court violated their due process right by denying them the relief contemplated in section 2923.5 et seq., but which was specified in legislation that became effective in January 2013.  We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts are taken from well-pleaded material allegations of the operative first amended complaint and matters properly subject to judicial notice.  (*City of Stockton v.*

---

[2]     Appellants explain in their opening brief that although Riggio purchased the subject property in her name, "[u]pon getting married to Sean McKenna in November 2006, Riggio filed and recorded a Grant Deed granting to Appellants, as husband and wife, the subject property as community property with rights of survivorship."

[3]     All statutory references are to the Civil Code.

*Superior Court* (2007) 42 Cal.4th 730, 734, fn. 2; *Thornton v. California Unemployment Ins. Appeals Bd.* (2012) 204 Cal.App.4th 1403, 1408.)

In July 2004, Riggio executed a promissory note in favor of Metrocities Mortgage, LLC for a $532,000 loan secured by real property on 1732 Geranium Street in Carlsbad, California.

Riggio signed the deed of trust securing the note. The deed of trust identifies the lender as Metrocities Mortgage, LLC; the trustee as Fidelity National Loan Portfolio Solutions; and the beneficiary as MERS.[4] The deed of trust states: "Borrower [i.e., Riggio] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property . . . ."

In December 2008, MERS recorded a substitution of trustee naming ETS as the replacement trustee. Myron Ravelo signed as Assistant Secretary of MERS.

In December 2008, ETS, as agent for MERS, recorded a notice of default notifying Riggio of possible sale of the property.

In March 2009, ETS recorded a notice of trustee's sale of the property.

---

[4]     The deed of trust reads: "The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successor and assigns) and the successors and assigns of MERS."

In March 2009, appellants sued MERS, GMAC, and ETS, seeking to enjoin foreclosure; they also sought declaratory relief and an accounting.

In August 2009, ETS recorded a trustee's deed upon sale of the property to Bank.

In December 2010, appellants filed the operative first amended complaint against GMAC, MERS, ETS, and Bank for causes of action to quiet title; to set aside the trustee's sale; to cancel trustee's deed; declaratory relief; and breach of contract.[5] Appellants attached the following documents as exhibits to the amended complaint: a December 2008 notice of default, the deed of trust; and an agreement between GMAC and Fannie Mae under the Home Affordable Modification Program (HAMP), a federal loan modification program.

In October 2011, respondents demurred to all the claims in the first amended complaint on grounds the claims failed to allege sufficient facts to state causes of action, and appellants lacked standing because (1) the property had already been sold and thus appellants lacked any remedy under section 2923.5, which provides only for postponement of a nonjudicial foreclosure sale; (2) appellants did not tender the amount owed and thus they could not pursue the first three causes of action; (3) the declaratory relief claim is not an independent cause of action; and (4) the contract action fails because under a HAMP servicer agreement, appellants are not third party beneficiaries to the agreement between GMAC and Fannie Mae. Respondents requested judicial notice

---

5    Appellants alleged other causes of action against other defendants, but those claims are not relevant here. This court separately granted appellants' request to dismiss their appeal against a different entity, Prospect Mortgage, LLC.

of the grant deed and deed of trust recorded in 2004, the December 2008 substitution of trustee and notice of default, the March 2009 notice of trustee's sale, and the August 2009 deed upon sale.

The trial court took judicial notice of the documents requested and other documents and, in December 2011, sustained the demurrer without leave to amend.  It ruled appellants had failed to tender the amount owed; there was no actual controversy because the house had been sold; and, under a HAMP servicer agreement, borrowers are incidental beneficiaries, not third party beneficiaries.[6]

DISCUSSION

Appellants summarize their appellate contentions as follows:  "[T]he alleged sale was improperly conducted, improperly held, and the trustee's deed wrongly executed, delivered and recorded in that there exist invalid presale procedures, for inadequate notice, for failure to comply with statutory requirements precedent to a foreclosure sale, for lack of authority to notice and conduct said sale of the Subject Property.  As such, any foreclosure sale conducted by a nontrustee must be void and the Trustee's Deed cancelled.  This establishes an ample factual basis for overruling the demurrer."

Appellants in their first amended complaint point to various defects in the foreclosure process:  "The Notice of Default contains an erroneous and fraudulent declaration to establish [respondents'] compliance with their duties under . . . section 2923.5."  They elaborate regarding the applicable law:  "30 days before the Notice of

_____

[6]     We grant appellants' unopposed August 2012 motion for judicial notice.

5

Default is recorded, the mortgagee or trustee must contact the borrower in person or by phone to explore options to avoid foreclosure. [¶] . . . [Appellants] did not receive any calls or visits from the mortgagee or its agents to assess [appellants'] financial situation and to explore options to avoid foreclosure." Appellants add that they did not receive letters via first-class mail or certified mail from the mortgagee or its agents that would indicate respondents attempted to satisfy due diligence under the statute. In their opening brief, appellants add new claims of procedural defects that were not alleged in their complaint.[7]

---

[7] Specifically, appellants' new claims involve the following procedural defects: the deed of trust names the trustee as "Fidelity National Loan Portfolio Solutions, a California Corporation," and the beneficiary as "Mortgage Electronic Registration Systems, Inc.," the substitution of trustee lists those entities respectively as "Fidelity National Title Portfolio Solutions" and "Mortgage Electronics Registration System, Inc."

Further, appellants argue, ". . . the Notary Public certifying under penalty of perjury in the alleged SUBSTITUTION OF TRUSTEE that Myron Ravelo 'personally appeared and proved on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed . . . he/she/they . . . his/her/their authorized capacity(ies) . . . his/her/their signature(s) . . . person(s) executed this instrument.' . . . does not signify whether she can attest to the gender or plurality of Myron Ravelo. So this notary declares nothing."

Appellants contend that although the trustee's deed upon sale states that Bank was the foreclosing beneficiary and thus exempt from the payment of transfer taxes charged by government agencies, to become a bona fide purchaser, one must have purchased the property for value. Moreover, the lis pendens on file in connection with the sale of the property undermines the claim that Bank was a bona fide purchaser. Appellants contend that neither the original lender nor a properly assigned beneficiary executed the substitution of trustee. Appellants claim they found "no assignment of the Deed of Trust filed with the [County Recorder] assigning the beneficial interests of the Deed of Trust."

Appellants claim, "The notice of Sale clearly specifies the date of sale as '4/16/2009 at 10:00 AM[.]' . . . Yet, [the] Trustee's Deed, in alleging compliance with all California Statutes regarding the mailing, publication and posting of notices, etc., boldly declares 'Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said property at public auction on 8/21/2009.' . . .

## I. *Demurrer Standard of Review*

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear:  ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law.  [Citation.]  We also consider matters which may be judicially noticed." [Citation.]  Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.  [Citation.]  When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action.  [Citation.]  And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff.' "  (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  "If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer.  '[W]e are not limited to plaintiffs' theory of recovery . . . .' "  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38.)  We review de novo whether the complaint alleges facts sufficient to state a cause of action.  (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077,

---

Notably absent in the Trustee's Deed is any mention of the monthly continuances of the sale."

Appellants contend, "ETS being part of GMAC, the loan servicer, it would appear that a serious *conflict of interest* is clearly in evidence here.  For, this GMAC has maneuvered itself to be the Loan Servicer, the alleged Trustee, the agent of said alleged Trustee, the Beneficiary and the Agent of the Beneficiary all at the same time!"  (Some emphasis omitted.)

7

1089, fn. 10; *CPF Agency Corp. v. Sevel's 24 Hour Towing Service* (2005) 132 Cal.App.4th 1034, 1042.)  " 'A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.' "  (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1153.)

If judicially noticeable facts render an otherwise facially valid complaint defective, the complaint is subject to demurrer.  (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)  And, "[w]here written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer."  (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800.)  "[F]acts appearing in exhibits attached to the complaint . . . , if contrary to the allegations in the pleading, will be given precedence."  (*Dodd v. Citizens Bank of Costa Mesa* (1990) 222 Cal.App.3d 1624, 1627; *Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 505.)

In California, the regulation of nonjudicial foreclosures pursuant to a power of sale is governed by the " 'comprehensive framework' " of sections 2924 through 2924k.  (*Melendrez v. D&I Investment, Inc.* (2005) 127 Cal.App.4th 1238, quoting *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830; see also *Ung v. Koehler* (2005) 135 Cal.App.4th 186, 202 [exercise of power of sale in a deed of trust " 'is carefully circumscribed by statute' "]; *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 86.)  The statutory scheme is intended to be "exhaustive" and courts will not incorporate unrelated provisions into statutory nonjudicial foreclosure proceedings.  (See *Moeller*, at p. 834.)  Under the

8

scheme, a "trustee, mortgagee or beneficiary, or any of their authorized agents" may record the notice of default—the document that initiates the nonjudicial foreclosure process. (§ 2924, subd. (a)(1); see also § 2924b subd. (b)(4) ["A 'person authorized to record the notice of default or the notice of sale' shall include an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee"].) There is abundant federal authority in accord. (*Morgera v. Countrywide Home Loans, Inc.* (E.D.Cal. 2010) 2010 WL 160348, [citing cases]; *Linkhart v. US. Bank Nat. Assn.* (S.D.Cal. 2010) 2010 WL 1996895; *Perlas v. Mortgage Elec. Registration Systems, Inc.* (N.D.Cal. 2010) 2010 WL 3079262 ["There is no requirement in California that the foreclosure be initiated by the lender itself"].)

II. *Causes of Action to Quiet Title, Set Aside the Trustee's Sale, Cancel Trustee's Deed; and Declaratory Relief*

A. *Valid substitution of trustee*

The trial court did not err in sustaining the demurrer to the first four causes of action in the amended complaint because a valid substitution of trustee was recorded. Section 2934a, subdivision (d) provides: "A trustee named in a recorded substitution of trustee shall be deemed to be authorized to act as the trustee under the mortgage or deed of trust for all purposes from the date the substitution is executed by the mortgagee, beneficiaries, or by their authorized agents. Nothing herein requires that a trustee under a recorded substitution accept the substitution. Once recorded, the substitution [of trustee]

9

shall constitute conclusive evidence of the authority of the substituted trustee or his or her agents to act pursuant to this section."

"Conclusive evidence" cannot be contradicted by any evidence to the contrary. (*Pullen v. Heyman Bros.* (1945) 71 Cal.App.2d 444, 452.) It is therefore tantamount to a substantive rule of law. (Cf. *Federal Deposit Ins. Corp. v. Superior Court* (1997) 54 Cal.App.4th 337, 346 [a conclusive presumption is not a rule of evidence but substantive rule of law].) Thus, a recorded substitution of trustee establishes the authority of the substituted trustee to act.

Here, the Substitution of Trustee was recorded. The trial court properly took judicial notice of its recordation. (See *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*).) As a matter of law, therefore, ETS had authority to act as the trustee under the deed of trust, to record the notice of sale, to conduct that sale, and to issue the trustee's deed to Bank.

Despite appellants' claims of error in the notice of default and other procedural errors in the foreclosure process, they have not shown the errors were material, or caused them prejudice. In *Debrunner v. Deutsche Bank Nat. Trust Co.* (2012) 204 Cal.App.4th 433, the plaintiff complained the notice of default was defective in part because there was no record of a substitution of trustee. The court in *Debrunner* relied on *Fontenot*, *supra*, 198 Cal.App.4th at p. 272, and ruled, " 'a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate [that] the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests.' " (*Debrunner*, at p. 443; accord, *Melendrez v. D & I Investment*, *supra*, 127 Cal.App.4th at p. 1257 [presumption that

10

nonjudicial foreclosure sale was conducted regularly and fairly may be rebutted only by substantial evidence of "prejudicial procedural irregularity"].)  In the absence of a showing of prejudice, we have no basis for invalidating the foreclosure sale.

B.  *No postsale relief contemplated in the statute*

A second reason for sustaining the demurrer to the first four causes of action is that notwithstanding the alleged procedural defects, there is no postsale relief contemplated in the statute.  "There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale.  We would merely note that under the plain language of section 2923.5, read in conjunction with section 2924g, the *only* remedy provided is a postponement of the sale before it happens."  (*Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 235; accord, *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526.)

C.  *Tender Rule Not Satisfied*

A third reason for sustaining the demurrer as to the above causes of action is that, as a general rule, a plaintiff may not challenge the propriety of a foreclosure on his or her property without offering to repay what he or she borrowed against the property.  The tender requirement applies to "any cause of action for irregularity in the sale procedure," including quiet title, rescission, and declaratory relief.  (*Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1109; see *McElroy v. Chase Manhattan Mortgage Corp.* (2005) 134 Cal.App.4th 388, 394; accord, *Karlsen v. American Sav. & Loan Assn.* (1971) 15 Cal.App.3d 112, 117 (*Karlsen*) [judgment on the pleadings properly granted where

11

plaintiff attempted to set aside trustee's sale for lack of adequate notice, because "[a] valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust"]; see *United States Cold Storage v. Great Western Savings & Loan Assn.* (1985) 165 Cal.App.3d 1214, 1222-1223 ["the law is long-established that a *trustor* or his successor must tender the obligation in full as a prerequisite to challenge of the foreclosure sale"].) This rule originated from the principle that, before asking a court to exercise its equitable powers to stop or set aside foreclosure proceedings, a defaulting borrower must first "do equity" himself. (*FPCI RE–HAB 01 v. E & G Investments, Ltd.* (1989) 207 Cal.App.3d 1018, 1021 [tender rule is based on equitable maxim that a court of equity will not order a useless act performed if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs].) This tender rule is strictly enforced. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 439.)

Absent a tender, a complaint seeking to set aside foreclosure proceedings fails to state a viable cause of action. (See *Karlsen*, *supra*, 15 Cal.App.3d 112 at p. 117.) Appellants did not allege they made such a tender. They also do not propose any facts showing it would be inequitable to require a full tender. Rather, they merely argue there was no valid substitution of trustee; therefore, the resulting foreclosure is void and they had no obligation to tender the loan balance. Under these circumstances, it would be inequitable to quiet title in appellants' names without requiring them to repay the secured loan obtained to purchase the property, since they would effectively obtain a windfall merely because a substitution of trustee form was signed on behalf of Bank by someone

12

other than the named representative.  (*See Stebley v. Litton Loan Servicing, LLP*, *supra*, 202 Cal.App.4th at p. 526.)

D.  *MERS's Role in The Foreclosure Process*

Appellants argue at length regarding MERS's role in nonjudicial foreclosures without citation to the record.  For example, appellants attack MERS's status as beneficiary, claiming, "In the alleged Notice of Default, a certain Sandy Ashimine as signatory, is required by law . . . to make a statement '*setting forth the nature of each breach actually known to her*,' though this is not quite true.  What the statute actually says is '*actually known to the beneficiary*.'  In the case of MERS as beneficiary, however, this is almost assuredly not a doable deed.  MERS is a ghost.  MERS is a fantasy, in the corporate sense.  It is not as you and I know it, like a big bank.  MERS is a fiction on the scale of *Alice in Wonderland*."  These arguments are unhelpful on our review of the sufficiency of their complaint, given our focus on their properly pleaded material facts and attached exhibits.  (*Zelig v. County of Los Angeles*, *supra*, 27 Cal.4th at p. 1126; *Barnett v. Fireman's Fund Ins. Co.*, *supra*, 90 Cal.App.4th at p. 505.)

In any event, we reject appellants' attacks on MERS as a valid beneficiary.  "As case law explains, 'MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans.  Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS.  MERS is listed as the grantee in the official records maintained at county register of deeds offices.  The lenders retain the promissory notes, as well as the servicing rights to

13

the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.' [Citation.] 'A side effect of the MERS system is that a transfer of an interest in a mortgage loan between two MERS members is unknown to those outside the MERS system.' " (*Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at p. 1151, citing *Mortgage Elec. Registration Sys. v. Nebraska Dept. of Banking & Fin.* (2005) 270 Neb. 529, 530 [704 N.W.2d 784] & *Jackson v. Mortgage Electronic Registration Systems, Inc.* (Minn. 2009) 770 N.W.2d 487, 491.)

We conclude that even if a legal basis existed for an action to determine whether MERS has authority to initiate a foreclosure proceeding, the deed of trust—which appellants have attached to their complaint—establishes as a factual matter that their claims lack merit. As stated in the deed of trust, appellants agreed by executing that document that MERS has the authority to initiate a foreclosure. Specifically, Riggio agreed that "MERS (as nominee for Lender and Lender's successors and assigns) has . . . the right to foreclose and sell the Property." The deed of trust contains no suggestion that the lender or its successors and assigns must provide Riggio with assurances that MERS is authorized to proceed with a foreclosure at the time it is initiated.[8] Riggio's agreement

---

8    We address the question of whether MERS should be considered a "beneficiary" of the deed of trust and thus authorized to initiate a foreclosure proceeding, regardless of whether it is authorized by the holder of the note, under the statutory provision stating that the *beneficiary* is entitled to initiate a foreclosure. (§ 2924, subd. (a)(1).) Some federal district courts have observed that although identified as a "beneficiary" in a deed

14

that MERS has the authority to foreclose thus precludes appellants from pursuing a cause of action premised on the allegation that MERS does not have the authority to do so.  As we explained in *Gomes v. Countrywide Home Loans, Inc.*, *supra*, 192 Cal.App.4th at page 1157, "Relying on the terms of the applicable deeds of trust, courts have rejected similar challenges to MERS's authority to foreclose."

### III.  *Cause Of Action For Cancellation Of A Trustee Deed*

Separately, we note the demurrer was properly sustained as to the appellants' request for cancellation of a trustee deed, because it "is not an independent cause of action, but a request for a particular remedy."  (*Solomon v. Aurora Loan Services, LLC* (E.D.Cal. July 3, 2012) 2012 WL 2577559 at *10; see *Plastino v. Wells Fargo Bank* (N.D.Cal. June 7, 2012) 873 F.Supp.2d 1179, 1189; *Yazdanpanah v. Sacramento Valley Mortg. Group* (N.D.Cal. Dec. 1, 2009) 2009 WL 4573381 at *6 ["A request to cancel the trustee's deed is 'dependent upon a substantive basis for liability, [and it has] no separate viability' "], quoting *Glue–Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018,

of trust, the role of MERS is not acting as a beneficiary as that term is commonly used, and that MERS in fact acts as a nominee, and thus an *agent* of the beneficiary.  (See, e.g., *Roybal v. Countrywide Home Loans, Inc.* (D.Nev. Dec. 9, 2010) 2010 U.S. Dist. Lexis 131287, *11 ["there is a near consensus among district courts in this circuit that while MERS does not have standing to foreclose as a beneficiary, because it is not one, it does have standing as an agent of the beneficiary where it is the nominee of the lender, who is the true beneficiary"]; *Weingartner v. Chase Home Fin.* (2010) 702 F.Supp.2d 1276, 1280 ["Calling MERS a 'beneficiary' is both incorrect and unnecessary . . . ," and "[c]ourts often hold that MERS does not have standing as a beneficiary because it is not one, regardless of what a deed of trust says, but that it does have standing as an agent of the beneficiary where it is the nominee of the lender (who is the 'true' beneficiary)"].)  However, because section 2924, subdivision (a)(1) and the deed of trust permit MERS to initiate foreclosure as a nominee (i.e., agent) of the noteholder, we need not, and do not, decide whether MERS is also a "beneficiary" as that term is used in California's nonjudicial foreclosure statute.

1023, fn. 3.) Because the trial court properly sustained respondents' demurrer on appellants' causes of action to set aside the trustee's sale and to quiet title, there are no remaining substantive bases for liability, and the trial court properly granted respondents' motion on appellants' cause of action to cancel the trustee's deed.

IV. *Contract Cause of Action*

HAMP is a loan modification program designed to reduce delinquent and at-risk borrowers' monthly mortgage payments. Under HAMP, individual loan servicers voluntarily enter into contracts with Fannie Mae, acting as the financial agent of the United States, to perform loan modification services in exchange for certain financial incentives. GMAC entered into the HAMP agreement.

Under the terms of the HAMP agreement and Department of the Treasury regulations, GMAC is required to evaluate borrowers for loan modifications within thirty days, grant loan modifications to qualified borrowers, forebear from foreclosure during the time that an application for a loan modification is pending, and advise loan modification applicants of the prohibition on foreclosure sales. The servicer's obligations are set forth in the servicer participation agreement, as well as in program guidelines established by the Department of the Treasury. (See *Villa v. Wells Fargo Bank, N.A.* (S.D.Cal. Mar.15, 2010) 2010 WL 935680, at *1; see also *Escobedo v. Countrywide Home Loans, Inc.* (S.D.Cal. Dec.15, 2009) 2009 WL 4981618, at *1.) Participating servicers are required to consider all loans eligible under the program; however, they are not required to modify mortgages. (See *Escobedo*, *supra*, at *2; see also *Hoffman v. Bank of Am., N.A.* (N.D.Cal. June 30, 2010) 2010 WL 2635773, at *4.)

16

Appellants allege respondents violated HAMP regulations because appellants had applied and were eligible for a loan modification and the foreclosure sale occurred during the pendency of the modification application.

"Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP." (*Cleveland v. Aurora Loan Serv., LLC, et al*. (N.D.Cal. May 24, 2011) 2011 WL 2020565, at \*4; see also *Carlos v. Bank of Amer. Home Loans, et al.* (C.D.Cal. Jan.13, 2011) 2011 WL 166343, at \* 1 ["[I]t is well established that there is no private cause of action under HAMP"], quoting *Singh v. Wells Fargo Bank* (E.D.Cal. Jan.7, 2011) 2011 WL 66167 at \*7, internal quotation marks omitted.) Because appellants have no private right of action against respondents under HAMP, the court did not err in sustaining the demurrer to this cause of action.

## V. *Appellants' Other Contentions*

Appellants claim the court infringed their due process rights because respondents' credibility is undermined by an April 2012 consent agreement entered into by 49 state attorneys general, the federal government and the country's five largest loan servicers, including GMAC. Appellants note that Bank was involved in a "robo-signing" scandal in a case before the Florida Supreme Court. Finally, appellants claim this court should grant them the benefit of California state laws within the "Homeowner's Bill of Rights," implemented on January 1, 2013, after the trial court's ruling on the demurrer. Appellants recognize the trial court was "in an awkward position relative to [their] argument, since there **was** no such guidance as is now well published in this 'Homeowner's Bill of Rights.'

17

"  But appellants ask, "Is it reasonable that a fundamental right afforded a borrower is not available [in August 2012, when the brief was filed], but will be available on January 1, 2013?"  They answer their own question:  "Appellants contend that this fundamental right was always intended in [section 2923.5 et seq.], but was routinely denied in the court's interpretations of same, and in this instant case."

We regard these contentions as forfeited.  Appellants fail to explain, in reference to the applicable law, why they should receive retroactive benefit of laws and a settlement agreement that went into effect after the court ruled on the demurrer.  They have not provided us the citation to the pertinent statutory provisions of the Homeowner's Bill of Rights.  "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "  (*Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799.)

### VI.  *Appellants Have Not Shown They Can Amend the Complaint*

In arguing the trial court erred by not permitting amendment of the complaint, appellants contend:  "Plaintiffs' causes of action, though pled economically, could be readily enhanced to provide more robust causes of action.  After all, this is a demurrer hearing and it would be exceedingly unfair to require that plaintiff plead his [*sic*] entire case at demurrer.  The breach of contract cause, for example, could be immeasurably emboldened in light of the written 'good faith' agreement between plaintiffs and defendants to accommodate a more robust charge of breach of contract or promissory estoppel."  Appellants further argue, "Similarly, the particular ownership relationship between GMAC, the loan servicer and ETS, the alleged trustee is problematic.  . . .  ETS'

18

position as part and parcel of GMAC the loan servicer's business empire [see GMAC Bankruptcy filing], its position as alleged Trustee, agent for Beneficiary and Beneficiary (by virtue of ETS employee Myron Ravelo having appointed himself *'Assistant Secretary'* of MERS) creates a conflict of interest which is the antithesis of the proposition our legislature intended when they enacted [section 2924 et seq.]."

Here, appellants' conclusory remarks do not suffice to demonstrate their ability to amend the complaint. Appellants "must show in what manner [they] can amend [their] complaint and how that amendment will change the legal effect of [their] pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.) Appellants' proposed amendment of the breach of contract cause of action is vague and fails to address the principal problem we identified in that cause of action, which is that appellants are not a party to the contract under HAMP. Further, appellants' comment regarding the purported conflict of interest between GMAC and ETS is not an allegation of facts establishing how they would defeat the claim that they did not offer tender or, alternatively, that because the foreclosure sale was proper, they have no postsale remedy under the nonjudicial foreclosure statute. We therefore conclude the trial court properly sustained the demurrer without leave to amend.

19

DISPOSITION

The judgment is affirmed.  GMAC Mortgage, LLC; MERSCORP, Inc.; Executive Trust Services, LLC.; and The Bank of New York Mellon Trust Company, N. A. are awarded costs on appeal.


O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.